UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, ) | |
| ) | CASE NO. 5:25-cv-2838 |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| PINE FORGE ACADEMY, ) | |
| ) | DEMAND FOR JURY TRIAL |
| and ) | |
| ) | |
| ALLEGHENY EAST CONFERENCE ) | |
| CORPORATION OF SEVENTH-DAY ) | |
| ADVENTISTS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

1. This is an action brought by Jane Doe (a pseudonym, hereinafter "Jane") against Pine Forge Academy and Allegheny East Conference Corporation of Seventh-Day Adventists (collectively, "Defendants").

2. Jane was a student and member of the choir at Pine Forge Academy from 2005-2008.

3. During her senior year, while still a minor, Jane was sexually abused by the school's choir director.

4. Prior to the sexual abuse, the Pine Forge Academy choir faculty and specifically the choir director had a history of inappropriate relationships with young women, and those inappropriate relationships were known to the faculty at Pine Forge Academy.

5. Jane brings this action to recover for life-long injuries caused by Defendants' actions, inaction, and indifference.

## PARTIES

6. Plaintiff Jane is an individual residing in the State of Maryland.[1]

7. Defendant Pine Forge Academy ("Pine Forge Academy") is a business entity of unknown form maintaining a principal place of business in Pine Forge, Pennsylvania.

8. Defendant Allegheny East Conference Corporation of Seventh-day Adventists ("Allegheny East Conference") is a nonprofit corporation maintaining a principal place of business in Pine Forge, Pennsylvania.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1332 and 1441(a) because diversity jurisdiction exists. Plaintiff is a citizen of Maryland and Defendants are citizens of Pennsylvania and the amount in controversy, without interest and costs, exceeds $75,000.

10. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b), as the causes of action against Defendants arose in this judicial district, a substantial part of the event which give rise to the claims herein occurred in the district, and Defendants are located in this district.

11. This Court has personal jurisdiction over the Defendants because the Defendants are located in and are effectively at home in this district.

## FACTUAL ALLEGATIONS

### Jane Enrolled at Pine Forge Academy

12. Pine Forge Academy is a private co-educational boarding school for students in ninth through twelfth grade.

13. Pine Forge Academy is operated by Allegheny East Conference.

---

[1] Plaintiff will file a Motion for Leave of Court to Proceed by Pseudonym.

14. Pine Forge Academy educates boarding students who are required to live on campus, as well as a small number of students that live with their families in the Pine Forge area.

15. Pine Forge Academy's mission includes "to provide a Christ-centered curriculum in a safe caring environment…."

16. Student housing at Pine Forge Academy consists of separate dorm rooms for male and female students.

17. Jane first enrolled at Pine Forge Academy as a Sophomore in the Fall of 2005.

18. Jane graduated from Pine Forge Academy in the Spring of 2008

19. Prior to attending Pine Forge Academy, Jane lived with her parents in Fort Washington, Maryland.

20. While attending Pine Forge Academy, Jane lived in the school's dorms.

21. By enrolling Jane in their school, Pine Forge Academy took custody of Jane and stood *in loco parentis*.

22. Jane was vulnerable, impressionable, and dependent on Pine Forge Academy for her safety while enrolled in the school.

23. Pine Forge Academy became Jane's primary caretaker upon her arrival at the school and continuing through her time on campus and involvement in student activities.

24. Strict rules existed at Pine Forge Academy that restricted students from freely leaving campus.

## Jane Joined the School's Choir Program

25. Pine Forge Academy has a proud and strong history of producing a strong choir program.

26. Students were welcomed to audition for the choir toward the beginning of each school year.

27. Jane auditioned for the choir in the Fall of 2005.

28. Her audition went well, and she joined the choir that same semester.

29. Jane quickly excelled in the choir at Pine Forge Academy because of her work ethic and excellent singing voice.

30. Jane was often asked to sing solos as part of the choir's performance.

31. The choir at Pine Forge Academy frequently traveled to sing at different churches or concert halls.

32. Jane was groomed for childhood sexual abuse as a member of the Pine Forge Academy choir.

**Grooming is a Series of Observable Behaviors that Predate Childhood Sexual Abuse**

33. Grooming is a series of manipulative behaviors used by a predator to place them in a position to sexually abuse another and reduce the risk of that predator being caught.

34. Grooming is a process that can start long before any sexual abuse takes place, and is aimed at slowly overcoming the victim's natural boundaries.

35. Grooming typically begins with selecting a possible victim that the predator can get close to and one that has certain vulnerabilities that the predator can take advantage of.

36. After a victim is selected, the grooming process typically continues with the predator building trust with the victim through attention, praise, building a "safe" environment and other means.

37. The trust building is meant to make the victim feel like they are in a caring relationship that is important to the victim in one way or another.

38. During and after trust is built, the predator will attempt to isolate the victim to normalize private settings in which the predator and victim are alone.

39. Both in private and in public, the predator will begin making physical contact with the victim and engaging in other conduct that appears harmless but begins to build toward and normalize inappropriate behavior.

40. Grooming frequently leads to the predator sexually abusing the victim unless someone intervenes.

41. At all times relevant hereto, it was possible and in fact essential for schools to train employees, staff, and all other agents of the school to recognize the signs of grooming and to the grooming so it does not lead to sexual abuse.

42. At all times relevant hereto, it was possible and in fact essential for schools to train employees, staff, and all other agents of the school to separate the vulnerable victims of grooming from predators after recognizing the signs of grooming.

43. At all times relevant hereto, it was possible and in fact essential for schools to train employees, staff, and all other agents of the school as to how to respond to reports of grooming so that responsible adults could step in and protect the victim of the grooming.

44. At all times relevant hereto, grooming and the resulting childhood sexual abuse of students in schools was a risk well known to the Defendants and all schools in this country.

45. At all times relevant hereto, the risks and life-long consequences of childhood sexual abuse were known or at least knowable to the Defendants.

### Dr. Ferdinand Groomed Jane

46. At all times relevant hereto, Jason Max Ferdinand ("Dr. Ferdinand") was employed as the choir director at Pine Forge Academy and was an agent of the Defendants.

5

47. Dr. Ferdinand groomed Jane, and much of this grooming was out in the open for all of Pine Forge Academy's faculty to see.

48. Dr. Ferdinand groomed Jane in many ways that included, but are not limited to:

    A. selecting Jane as a member of the choir;

    B. selecting Jane to play a large role as a singer in the choir;

    C. paying more attention to Jane than any other choir member;

    D. appointing Jane to positions within the choir so that he could work with her in small groups, or just the two of them;

    E. texting Jane constantly on her cell phone;

    F. calling Jane constantly on her cell phone;

    G. sitting in the same seat as Jane on bus trips while all other students were required to sit with another choir member of the same sex;

    H. driving alone with Jane in his car to choir trips when the bus was overbooked;

    I. holding Jane's hand on bus trips and elsewhere; and

    J. forcing Jane to come to Dr. Ferdinand's hotel room on choir trips to unpack and iron his clothing.

49. Pine Forge Academy employees were aware of some of the inappropriate conduct that constituted grooming.

### Mr. Thomas Was Aware of Dr. Ferdinand's Grooming of Jane

50. Neil Thomas ("Mr. Thomas") was an organist and pianist at Pine Forge Academy.

51. At all times relevant hereto, Mr. Thomas was an employee and agent of the Defendants.

52. Mr. Thomas practiced and traveled with the Pine Forge Academy choir program.

53. Mr. Thomas frequently witnessed Dr. Ferdinand's grooming of Jane.

54. The grooming was also reported to the appropriate administrators at Pine Forge Academy.

**Dean Kibler Was Aware of Dr. Ferdinand's Grooming of Jane**

55. Jane had a group of close friends at Pine Forge Academy who were aware of the inappropriate relationship Dr. Ferdinand was engaged in with Jane.

56. The close friends would gather in a dorm room at night and try to figure out how to get Jane out of this inappropriate relationship.

57. Dean Camille Kibler ("Dean Kibler") was the Dean of Young Women at Pine Forge Academy while Dr. Ferdinand was grooming Jane.

58. At all times relevant hereto, Dean Kibler was an employee and agent of the Defendants.

59. As Dean of Young Women, Dean Kibler's responsibilities included:

   A. supervising students;

   B. keeping in close touch with the female students;

   C. monitoring the health of the female students;

   D. ensuring proper sign-out procedures for activities outside the dorm and off campus;

   E. counseling female students to protect them and support their growth;

   F. preventing misconduct in the school;

   G. investigating misconduct in the school; and

   H. escalating situations that endanger students.

60. At least two of Jane's close friends spoke to Dean Kibler about the grooming that Dr. Ferdinand was engaged in with Jane.

61. Dean Kibler brushed off the report and had a nonchalant attitude regarding the grooming that Dr. Ferdinand was engaged in.

7

62. Dean Kibler told Jane's friends that they had received these types of reports before and that nothing could be done about it.

63. Jane's friends were looking for more urgency and guidance as to how to help their friend, and did not find it after talking with Dean Kibler.

64. No actions were taken to investigate the allegations, protect Jane, or stop Dr. Ferdinand following Jane's friends' conversations with Dean Kibler.

65. No actions were taken to stop Dr. Ferdinand from grooming Jane following Jane's friends' conversations with Dean Kibler.

### **Dean Peace Was Aware of Dr. Ferdinand's Grooming of Jane**

66. Dean Helen Peace ("Dean Peace") was the Assistant Dean of Young Women at Pine Forge Academy while Dr. Ferdinand was grooming Jane.

67. At all times relevant hereto, Dean Peace was an employee and agent of the Defendants.

68. As Assistant Dean of Young Women, Dean Peace's responsibilities included:

   A. supervising students;

   B. keeping in close touch with the female students;

   C. monitoring the health of the female students;

   D. ensuring proper sign-out procedures for activities outside the dorm and off campus;

   E. counseling female students to protect them and support their growth;

   F. preventing misconduct in the school;

   G. investigating misconduct in the school; and

   H. escalating situations that endanger students.

69. At least two of Jane's close friends spoke to Dean Peace about the grooming Dr. Ferdinand was engaged in with Jane.

8

70. Jane's friends were looking for more urgency and guidance as to how to help their friend, and did not find it after talking with Dean Peace.

71. No actions were taken to investigate the allegations, protect Jane, or stop Dr. Ferdinand following Jane's friends' conversations with Dean Peace.

### Jane's Friends Confronted Dr. Ferdinand and Mr. Thomas

72. After being dismissed by the Dean of Young Women and the Assistant Dean of Young Women, Jane's friends confronted Dr. Ferdinand himself.

73. Mr. Thomas was present during the confrontation of Dr. Ferdinand.

74. In the confrontation, Jane's friends told Dr. Ferdinand that they knew what he was doing was wrong, that they knew what was going on, that they had seen it happen before, and that it needed to stop.

75. In response, Dr. Ferdinand gaslit Jane's friends by telling them that what they saw is not what they thought it was.

### Dr. Ferdinand Sexually Abused Jane

76. In February or March of 2008, Dr. Ferdinand sexually abused Jane by kissing her and rubbing her private parts under her clothing with his hand.

77. Shortly thereafter, Dr. Ferdinand again sexually abused Jane in a similar manner.

78. At the time of each act of sexual abuse, Jane was under the age of 18 and thus unable to consent.

79. The conversations with Dean Kibler, Dean Peace, and Mr. Thomas occurred prior to the sexual abuse.

80. Both instances of sexual abuse involved forcible compulsion:

    A. Dr. Ferdinand was a grown man and Jane was a child;

B. Dr. Ferdinand held a position of moral authority as the director of the choir program at a religious-based school;

C. Dr. Ferdinand had groomed Jane for over two years prior to the acts of sexual abuse;

D. Dr. Ferdinand was older than Jane;

E. Jane was an impressionable young woman committed to excelling in the choir program; and

F. Jane was a minor at a boarding school and other their custody and control.

**Defendants Were Aware That Dr. Ferdinand Groomed Another Student Prior to Jane Even Enrolling at Pine Forge Academy**

81.     Prior to Jane even enrolling at Pine Forge Academy, Dr. Ferdinand was involved in a similarly inappropriate relationship with a member of the choir.

82.     This prior inappropriate relationship involved years of grooming, similar and at times almost identical, to the grooming Dr. Ferdinand engaged in with Jane.

83.     The grooming in the prior relationship included:

A. paying more attention to the female student than any other choir member;

B. appointing the female student to positions within the choir so he could work with her in small groups, or just the two of them;

C. texting the female student constantly on her cell phone;

D. calling the female student constantly on her cell phone;

E. sitting in the same seat as the female student on bus trips while all other students were required to sit with another choir member of the same sex;

F. driving alone with the female student in his car to choir trips when the bus was overbooked; and

G. holding the female student's hand on bus trips and elsewhere.

84.     Prior to Jane even enrolling at Pine Forge Academy, faculty at Pine Forge Academy were aware of this earlier inappropriate relationship that Dr. Ferdinand had with a member of the choir.

85. While this prior inappropriate relationship was going on, a member of the faculty at Pine Forge Academy wrote Dr. Ferdinand a letter telling him that the relationship was inappropriate and he needed to be careful.

86. The first individual groomed by Dr. Ferdinand graduated the year before Jane enrolled at Pine Forge Academy.

87. A year after this first individual graduated from Pine Forge Academy, she spoke with Dean Kibler and told Dean Kilber that you have to watch out for male teachers having inappropriate relationships with students at Pine Forge Academy.

88. This now-graduated student told Dean Kibler that specifically she should look out for Dr. Ferdinand and Mr. Thomas engaging in inappropriate relationships with students.

89. This report was made years prior to Jane being sexually abused by Dr. Ferdinand.

**Defendants Are Responsible for the Sexual Abuse of Jane**

90. The conduct engaged in by Dean Kibler, Dean Peace, Mr. Thomas, and Dr. Ferdinand described herein violated multiple Pine Forge Academy policies.

91. Through all of the reports to and observations of Pine Forge Academy staff, described herein, the Defendants knew or at least should have known of Dr. Ferdinand's personal characteristics and propensity to sexually abuse a child prior to the sexual abuse of Jane.

92. As a direct and proximate result of Defendants' conduct described herein, Jane was caused to suffer and will continue to suffer emotional and physical injuries, including but not limited to sleep disturbance, fatigue, depression, anxiety, poor concentration, dizziness, sweating, racing heart, shock, PTSD, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

93. As a direct and proximate result of Defendants' conduct described herein, Jane has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

94. As a direct and proximate result of Defendants' conduct described herein, Jane has suffered irreparable harm in the form of an increased loss of independence, difficulty maintaining interpersonal relationships, distrust in peers and authority figures, feelings of emotional numbness, psychological damages, feelings of hopelessness, detachment, and inability to concentrate, embarrassment, fear, shame, and loss of self-worth.

95. As a direct and proximate result of Defendants' conduct described herein, Jane has suffered a severe impairment and disruption of her enjoyment of life, identity, belief structure, and a decrease in the pleasures of activities she once enjoyed.

96. The sexual abuse and resulting damages described herein were entirely preventable by the Defendants.

97. At all times relevant here to, Defendants acted by and through its duly authorized actual and/or apparent agents, servants, employees, within the course and scope of their actual and/or apparent authority.

98. There was a special relationship between Defendants and Jane.

99. There was a special relationship between Defendants and Dr. Ferdinand.

100. Defendants had the authority and responsibility to maintain a safe and secure environment for students, standing *in loco parentis* to those students.

101. Defendants had the responsibility to promulgate and enforce policies, customs, and practices to prevent grooming and childhood sexual abuse.

102. Defendants had actual and constructive knowledge of undisputable risks to students at their school, in their dorms, and in their choir program and took no action to eliminate, mitigate, or even further investigate the extent of those risks.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

103. Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs.

104. Defendants were negligent under the facts stated herein because Defendants failed to use the degree of care, precaution, and vigilance which a reasonably prudent person or entity would use under the same or similar circumstances, including, but not limited to, the negligent affirmative acts detailed herein which a reasonably prudent person or entity would not have done, and the negligent omissions or failures to take precautions as detailed herein which a reasonably prudent person or entity would have done or taken under the circumstances.

105. Defendants had a duty to protect their students.

106. Defendants had a duty to maintain a safe school and choir program for all students, specifically Jane.

107. Defendants had a duty to ensure their students were not subject to dangerous and unsafe circumstances.

108. Defendants had a duty to warn their students of the threat of harm and danger of Defendants employment of Dr. Ferdinand.

109. Defendants had a duty to develop and follow policies, rules, regulations and procedures to prevent childhood sexual abuse.

110. Defendants had a duty to stop its employees from grooming students.

111. Defendants had a duty to stop childhood sexual abuse.

112. Defendants had a duty to protect Jane against unreasonable risks.

113. Defendants had a duty to protect Jane from childhood sexual abuse.

114. Defendants had a duty to provide Jane with the highest degree of care.

115. Defendants had a duty to supervise Jane and protect her from foreseeable harms.

116. Defendants had a duty to control Dr. Ferdinand to prevent him from intentionally harming others.

117. Defendants breached each of the duties described above, and these breaches were the proximate cause of the sexual abuse, injuries, and damages suffered by Jane.

## COUNT II
## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION
### (Against All Defendants)

118. Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs.

119. Defendants had a duty to use reasonable care to supervise, direct, and control Dr. Ferdinand in a way that would not create an unreasonable risk of harm to students.

120. Defendants had a duty to exercise ordinary and reasonable care to prevent Dr. Ferdinand from imparting intentional harm both inside and outside the scope of his employment.

121. Defendants had a duty to investigate Dr. Ferdinand.

122. Defendants had a duty to monitor Dr. Ferdinand's interactions with minors, especially female choir students.

123. Defendants had a duty to train their employees to identify students at risk of childhood sexual abuse.

124. Defendants had a duty to train their employees to recognize and report the signs of childhood sexual abuse.

125. Defendants had a duty to train their employees to respond to allegations of inappropriate relationships between employees and students.

126. Defendants had a duty to train their employees to report signs and suspicion of childhood sexual abuse, including potential childhood sexual abuse.

127. Defendants had a duty to train their employees to stop the grooming of students.

128. Defendants had a duty to train their employees to stop childhood sexual abuse.

129. Defendants had a duty to provide reasonable observation, management, and direction to their employees and agents and to ensure that they were acting to protect the youth under their care.

130. Defendants had a duty to ensure that all training was adequate to accomplish its goals.

131. Defendants had a duty to ensure that all training was being followed by their employees.

132. Defendants had a duty to supervise their employees, including Dr. Ferdinand.

133. Defendants had a duty to reasonably monitor and control their employees, including Dr. Ferdinand.

134. Defendants had a duty to terminate Dr. Ferdinand's employment.

135. Defendants had a duty to control Dr. Ferdinand.

136. Defendants breached each of the duties described above, and these breaches were the proximate cause of the sexual abuse, injuries, and damages suffered by Jane.

## COUNT III
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

137. Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs.

138. Defendants assumed contractual and *in loco parentis* tort duties to Jane.

139. Defendants had a duty to exercise reasonable care to protect Jane from harm while she was a student and member of the choir at Pine Forge Academy.

140. Defendants undertook these duties gratuitously or for valid consideration to protect Jane and her family's educational investment.

141. Defendants had a duty to adopt written policies, procedures, protocols, and agreements governing its employees and other agents to protect students, including Jane.

142. Defendants owed Jane a duty under applicable law to ensure her safety and well-being.

143. Defendants knew or should have known that its conduct involved an unreasonable risk of causing Jane emotional distress and knew or should have known that the distress would result in illness or other physical injuries.

144. It was reasonably foreseeable that a student in Jane's position would experience severe emotional damage as a result of Defendants' conduct.

145. It was reasonably foreseeable to Defendants that their conduct would increase the risk of harm to Jane.

146. Defendants, through their employees and other agents, were negligent.

147. Defendants, through their employees and other agents, unintentionally caused emotional distress to Jane and are responsible for her damages.

148. As a result of Defendants conduct, Jane suffered severe emotional distress, pain and suffering, physical pain, and other injuries.

149. As a result of the Defendants' conduct, Jane's harm was so extreme that a reasonable person should not and cannot be expected to endure the resulting stress.

150. The severe emotional harm that Plaintiff suffered in the past, suffers today, and will suffer in the future, is described herein and was caused by Defendants' negligence.

**COUNTY IV**
**VICARIOUS LIABILITY**
**FOR AGENTS' NEGLIGENCE**
**(Against All Defendants)**

151. Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs.

152. Defendants are vicariously liable for the negligent acts of their employees or agents empowered to and responsible for protecting Jane from the unreasonable risks presented by the employment of Dr. Ferdinand.

153. All agents discussed herein had a duty to use reasonable care in performing their work for Defendants.

154. At all times relevant to, Dean Kibler acted within the course and scope of her employment with the Defendants.

155. At all times relevant to, Dean Kibler was employed to further Defendants' business.

156. Dean Kibler had a duty to act as a reasonably prudent person under the circumstances in her position of Dean of Young Women at Pine Forge Academy.

157. Dean Kibler was negligent under the facts stated herein because she failed to use the degree of care, precaution, and vigilance which a reasonably prudent person or entity would

use under the same or similar circumstances, including but not limited to the negligent acts described herein which a reasonably prudent person would not have done, and omissions or failures to take precautions which a reasonably product person would have done or taken under the circumstances.

158. Dean Kibler breached her duty, and that breach is a cause of Jane's damages described herein.

159. The Defendants are vicariously liable for the various breaches of duties of Dean Kibler and the damages they caused Jane.

160. At all times relevant to, Dean Peace acted within the course and scope of her employment with the Defendants.

161. At all times relevant to, Dean Peace was employed to further Defendants' business.

162. Dean Peace had a duty to act as a reasonably prudent person under the circumstances in her position of Assistant Dean of Young Women at Pine Forge Academy.

163. Dean Peace was negligent under the facts stated herein because she failed to use the degree of care, precaution, and vigilance which a reasonably prudent person or entity would use under the same or similar circumstances, including but not limited to the negligent acts described herein which a reasonably prudent person would not have done, and omissions or failures to take precautions which a reasonably product person would have done or taken under the circumstances.

164. Dean Peace breached her duty, and that breach is a cause of Jane's damages described herein.

165. The Defendants are vicariously liable for the various breaches of duties of Dean Peace and the damages they caused Jane.

166. At all times relevant to, Mr. Thomas acted within the course and scope of his employment with the Defendants.

167. At all times relevant to, Mr. Thomas was employed to further Defendants' business.

168. Mr. Thomas had a duty to act as a reasonably prudent person under the circumstances in his position of organist and pianist in the choir at Pine Forge Academy.

169. Mr. Thomas was negligent under the facts stated herein because he failed to use the degree of care, precaution, and vigilance which a reasonably prudent person or entity would use under the same or similar circumstances, including but not limited to the negligent acts described herein which a reasonably prudent person would not have done, and omissions or failures to take precautions which a reasonably product person would have done or taken under the circumstances.

170. Mr. Thomas breached his duty, and that breach is a cause of Jane's damages described herein.

171. The Defendants are vicariously liable for the various breaches of duties of Mr. Thomas and the damages they caused Jane.

172. At all times relevant hereto, Dr. Ferdinand was an employee of Defendants.

173. Dr. Ferdinand used force in his sexual abuse of Jane.

174. Defendants knew that Dr. Ferdinand personal characteristics made it likely that he would create an unreasonable risk of harm to others.

175. Dr. Ferdinand's actions caused Jane's damages described herein.

176. Defendants are vicariously liable for the tortious conduct of its employees and agents.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount to be determined by the jury, but in excess of $75,000, exclusive of prejudgment interest, costs and damages for prejudgment delay, and other legal and equitable relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial for all issues so triable in this action.

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com