**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE<br><br>                         Plaintiff<br>     v.<br><br>PINE FORGE ACADEMY  and<br>ALLEGHENY EAST CONFERENCE OF<br>THE SEVENTH-DAY ADVENTISTS<br><br>                     Defendants | No.: 5:25-cv-2838<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS PINE FORGE ACADEMY AND ALLEGHENY EAST CONFERENCE OF THE SEVENTH-DAY ADVENTISTS' MOTION *IN LIMINE* TO PRECLUDE IMPROPER "REPTILE THEORY" AND OTHER INFLAMMATORY <u>ARGUMENTS</u>**

Defendants, Pine Forge Academy and Allegheny East Conference of Seventh-Day Adventists, by and through their counsel, Weber Gallagher Simpson Stapleton Fires & Newby LLP, hereby submit the following Motion *in Limine* to preclude Plaintiffs from introducing improper "Reptile Theory" and other inflammatory arguments and/or testimony at trial, and in support thereof state as follows:

## I.  <u>FACTUAL BACKGROUND</u>

Plaintiff initiated this lawsuit by filing her complaint on or about June 3, 2025, in connection with two incidents of alleged unwanted physical contact that occurred on a bus almost 20 years ago in February or March 2008 between Plaintiff, then a 17 ½ year old student in her senior year, and a male choir director, a former employee of Pine Forge Academy. Pine Forge Academy is a co-educational Seventh-Day Adventist school serving grades 9 – 12 in Pine Forge, Pennsylvania. Plaintiff is a life-long resident of Maryland who attended Pine Forge Academy for three years from 2005 to 2008. She graduated from the Academy in or about May 2008.

1

It is anticipated that during trial, Plaintiff or Plaintiff's counsel may attempt to appeal to the jury's own sense of safety generally or the safety of schools generally rather than addressing the facts of Plaintiff's specific claims. Plaintiff should be precluded from appealing to the jury's general sense of safety

As such, it is anticipated that, at the time of trial, Plaintiff's counsel will attempt to engage in trial tactic based on those described in a well-publicized book entitled "Reptile."

## II.   **LEGAL ARGUMENT**

### A.  **Legal Standard**

The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990). Rule 103(d) of the Federal Rules of Evidence expressly encourages the presentation of pretrial motions in limine in order to shield the jury from being exposed to inadmissible evidence. Fed. R. Evid. 103(d) In order to be admissible, the proffered evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, even relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

### B.  **The Plaintiff Should be Precluded From Employing the Reptile Theory to Unduly Appeal to Jurors' Anxiety About Their Personal Safety and The Welfare of their Community**

Trial courts increasingly have seen the use of a controversial and improper approach to litigation that is described by its advocates as the "Reptile Theory." Under the Reptile Theory,

plaintiff's attorneys proffer arguments appealing to jurors' perception of their own safety and the safety of the community rather than addressing the merits of the plaintiff's claims. The law grants judges broad authority to protect the judicial process from prejudicial influences. In recognition of that authority, this Court should preempt use of this manipulative strategy in this trial court that is designed to unfairly and inequitably pervert jurors' deliberation. Specifically, some attorneys are misusing social and neurological science to formulate arguments that unduly appeal to juror's anxiety about their personal safety and the welfare of their community, rather than evidence with regard to the defendant. This method of argument to jurors has been characterized as the "Reptile Theory." Indeed, this methodology of argument simply is a variant of the prohibited Golden Rule argument and it should be precluded in this matter.

The Reptile Theory is based on social and neurological science hypotheses championed by neuroscientist Dr. Paul McLean in the 1960s. Dr. MacLean theorized that the human brain evolved in stages. First, the "reptilian complex" associated with the survival instinct. Next, the "paleomammalian complex," correlated with empathy and emotion. The final stage was the "neomammalian complex," associated with reason, logic, creativity, and language. The theory has been rejected by most neuroscientists in this century. Nonetheless, it continues to be used by those seeking to simplify reasons for human behavior. *See*, Howard & Dymott, *A Field Guide to Southern California Snakes: Identifying and Catching Plaintiffs' Reptile Theory in the Wild* (2013) Verdict, Vol. 3, p. 11 (hereafter "*A Field Guide to Southern California Snakes*"); Broda-Bahm, *Taming the Reptile: A Defendant's Response to the Plaintiffs Revolution* (2013) The Jury Expert, Vol. 25, Issue 5, pp. 1-2).

Relying on MacLean's theory about the reptile brain, plaintiffs' attorney Don Keenan and jury consultant David Ball published a book, *Reptile: The 2009 Manual of the Plaintiff's*

*Revolution* (hereinafter, "Reptile Manual"). They advocated appealing to the juror's "reptile brain" – in other words, basic survival instinct. The idea is that once triggered, the jurors' "reptile brains" will take over their higher-order thinking and compel them to reach a result that best protects the safety of their community.

The authors of the Reptile Manual explain that plaintiffs' counsel should couch the defendant's conduct in terms of the perceived threat to the community's safety. *Ball & Keenan, Reptile Manual* (2009), p. 55. The Reptile Manual argues that plaintiff's counsel should use this "umbrella rule" to trump the standard of care that would otherwise govern the defendant's conduct. *See* Reptile Manual, *supra*, at 62. By focusing on community safety, the Reptile Theory seeks to influence jury verdicts by appealing to the self-interest of jurors. "*Justice – is … an excuse – a feel-good rationale – for* people to protect themselves and their families." Reptile Manuel, *supra*, at 44 (emphasis added). The Reptile Theory avoids the merits of the plaintiffs' claim by appealing to the jurors' personal interest in their *own* safety and that of their community, with the plaintiffs' claim being merely a placeholder for deep-seated, even subconscious, fears that jurors harbor about themselves and their families: "Show the Reptile that a good verdict for you facilitates her survival." Id. at 45.

The authors of the manual urge that the key is to "[b]roaden" the case and "go beyond your specific kind of defendant." Reptile Manual, *supra*, at 56 (boldface omitted). Rather than focus on whether the defendant's conduct actually caused injury to the plaintiff, the Reptile Theory asks whether the defendant's conduct "represents a community danger." Id. at 31 (emphasis added). To move the focus away from the actual plaintiff, the Reptile Theory asks not how the defendant harmed that plaintiff, but instead how much harm the defendant could have caused some other plaintiff.: "The valid measure is the *maximum* harm the act *could* have caused." Id. at 33. The

4

actual facts of the case are secondary: "How much harm could it cause *in other kinds of situations*." Id. at 34. (emphasis added, boldface omitted). For example, commentators have noted that, in a case involving an automobile accident on a freeway, the Reptile Theory encourages the plaintiffs' attorneys to imagine that the threat from the accident extended to the jurors' own homes: The Reptile takes the car that caused the accident, has the driver take an off ramp into the juror's community, and only stop the car after it has threatened a *few* local schools and the community's retirement home. *See A Field Guide to Southern California Snakes, supra*, at 12.

The fundamental premise of the "Reptile" theory is that plaintiffs' attorneys should show the jury that the defendant's conduct was not just a threat to the plaintiff, but a threat to "society," including jurors and the jurors' families. *See* Reptile Manual, *supra,* at 69.  It seeks to invoke the jurors' fears and emotions and encourages plaintiffs' counsel to rely on universally prohibited techniques. The authors of *Reptile* brazenly state the following:

> We are Dopamine-trophic (we like it) and terror-phobic (we fear and hate it).  That's how the Reptile controls us.
>
> Does all this mean we take orders from a pea-brained snake?  Yes. When we face decisions that impact the safety of our genes, the Reptile is in full control of our emotions as well as what we think is our rational logic.
>
> *Justice…?*  In trial, "justice" helps mainly when you show that justice equates to safety for the juror's Reptile.  To show this, you need not violate the Golden Rule restriction (but see Appendix B). You will bring jurors to figure out that *community safety is enhanced by means of justice*.  You are not asking jurors to sacrifice justice for the sake of safety.  *You instead show that justice creates safety.*

Id. at 19 (emphasis added).

According to the authors, the primary goal at trial under the "Reptile Theory" is "[t]o show the immediate danger of the *kind of thing* the defendant did – and how fair compensation can

diminish that danger within the community." Id. at 30 (emphasis in original). The authors correlate this trial goal in civil trials with criminal trials by stating:

> This is close to what violent-crime jurors think: They see the immediate danger of the kind of thing the defendant did – and they see that conviction can diminish that danger.

Id. at 31.

Further, the authors of Reptile Manual provide that they are often asked:

> 'How does all this negligence stuff relate to causation and damages?' It relates in the most important way: It gives the jurors personal reason to want to see causation and dollar amount come out justly, because a defense verdict will further imperil them. Only a verdict your way can make them safer."

Id. at 39.

As such, the "Reptile" theory attempts to shift the legal standard and burden of proof by focusing on "safety rules." The most encompassing "safety rule" is called the "Umbrella Rule." Id. at 55. According to the authors, "[t]he Umbrella Rule is the widest general rule that defendant violated – wide enough to encompass every juror's Reptile." Id. The "Umbrella Rule" ignores the legal duty and standard of care and instead posits that the issue is whether the defendant acted in the safest way, regardless of the applicable standard of care. Id. at 63.

At its core, then, the "Reptile" theory is nothing more than an attempt to subvert the proper legal standard applicable to the case. It is also a calculated attempt to try to bypass the "Golden Rule" by encouraging the jury to decide the case based upon their personal interests and bias. Indeed, the authors of the "Reptile" theory essentially acknowledge this fact by including a 59-page appendix outlining the "Golden Rule" prohibitions in each jurisdiction, as well as instructions throughout the book outlining potential ways to attempt to get around these rules.

The authors likewise acknowledge that a community-based argument is merely a disguise for appealing to the individual juror directly.  Id. at 99 ("So as with all things Reptilian, you show that the safer decision for the community (and thus the individual juror) is a fair verdict for your client."); *see also,* Id. at 119. Just as a "Golden Rule" argument is impermissible, a "sending a message"-type argument improperly implores a juror to act based on harms which may have been done to others outside the parties to the litigation at hand, including themselves. The "protect your community" approach appeals to jurors by inflaming their emotions and seeking a form of social retribution rather than evaluating the evidence presented in the particular case and applying the law. Finally, use of terms such as "moral duty," "ethical duty," "public safety," "safety rules," "safest option," and "right to know" all attempt to appeal to jurors to base their computation of damages upon sympathy for (or empathy with) a plaintiff, without any consideration for the legal questions at hand.

At the most fundamental level, these arguments violate a defendant's constitutional rights. Litigants have a constitutional right to a trial of their claims before an impartial jury. For this right to have meaning, juries must decide cases based on the facts and law – not based on appeals to self-interest. Therefore, allowing Plaintiff's counsel to present these arguments at trial would not only be irrelevant, but would be extremely prejudicial and confusing to a jury. By focusing the jury on harm to the community, arguments based on the Reptile Theory improperly seek to "send a message" to the defendant based on purported culpability that is untethered to the alleged harm to the plaintiff. Even without uttering the phrase, "send a message," counsel who rely on the Reptile Theory urge the jury to effect deterrence of future harm through their compensatory damages awards. Any attempts by Plaintiff to employ the "Reptile Theory" argument at trial would

cause undue prejudice to Defendants, Pine Forge Academy and Allegheny East Conference of the Seventh-Day Adventists.

Even allowing Plaintiff's counsel to proceed to *voir dire* and opening statements under the impression that such arguments can be advanced would significantly prejudice Defendants. As stated in *Reptile*, "[a] defense objection will imply there's something to hide." Therefore, if Plaintiff's counsel seeks to pursue "Reptile"-based arguments, even if this Court were to sustain an objection by Defendants, the damage would already be done and Defendants would be irreparably prejudiced.

### III.    CONCLUSION

For all the foregoing reasons, Defendants, Pine Forge Academy and Allegheny East Conference of the Seventh-Day Adventists, respectfully request that this Honorable Court grant Defendants' Motion *in Limine* to preclude Plaintiff from using the "Reptile Theory" at trial.

Respectfully submitted,

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP**

*/s/ Tracy A. Walsh*

By:    _____

Tracy A. Walsh, Esquire
I.D. No. 62481
Matthew P. Donelson, Esquire
I.D. No. 84155
Georgios Farmakis, Esquire
I.D. No. 319119
2000 Market Street, Suite 1300
Philadelphia, PA 19103
*Attorneys for Defendants,*
*Pine Forge Academy and*
*Allegheny East Conference of the*
*Seventh-Day Adventists*

Date:  July 8, 20

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE<br><br>              Plaintiff<br>     v.<br><br>PINE FORGE ACADEMY  and<br>ALLEGHENY EAST CONFERENCE OF<br>THE SEVENTH-DAY ADVENTISTS<br><br>              Defendants | No.: 5:25-cv-2838<br><br>JURY TRIAL DEMANDED |

**CERTIFICATE OF SERVICE**

I, Tracy A. Walsh, Esquire, hereby certify that a true and correct copy of the foregoing Motion *in Limine* was served on all counsel of record on the date set forth below via electronic filing notice.

Respectfully submitted,

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP**

*/s/ Tracy A. Walsh*

By:       _____

Tracy A. Walsh, Esquire
*Attorneys for Defendants*

Date: <u>July 8, 2026</u>