**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JANE DOE, | : | Civil No. 5:25-cv-02838-JMG | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | JUDGE JOHN M. GALLAGHER | |
| | : | | |
| PINE FORGE ACADEMY, *et al.,* | : | | |
| Defendants. | : | JURY TRIAL DEMANDED | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE ANY EVIDENCE RELATING TO VERONICA JOHNSON**

Now Comes Plaintiff, by and through the undersigned counsel, and hereby responds to Defendants' Motion *in Limine* to Preclude Any Evidence Relating to Veronica Johnson. (Doc. 56).

## I.    INTRODUCTION

Defendants Pine Forge Academy and the Allegheny East Conference of Seventh-Day Adventists ("Defendants") seek to exclude the testimony of and any reference to Veronica Johnson at the trial in this matter. Their motive is apparent. What happened to Veronica Johnson shows that adults at Pine Forge Academy knew of Jason Ferdinand's inappropriate behavior with a girl in the choir before the Plaintiff in this case ever enrolled at the boarding school. Plaintiff brings negligence claims, and generally needs to prove that the Defendants' conduct was unreasonable under the circumstances. Those circumstances include what they knew, and when they knew it, with respect to Jason Ferdinand's misconduct.

Veronica Johnson will testify about the misconduct Mr. Ferdinand engaged in with respect to her while she was star of the school's prestigious choir. She will testify that the misconduct was observable to adults at Pine Forge. She will also testify that she told Pine Forge Dean of Young

Women Camille Kibler to watch out for Jason Ferdinand's interactions with the female students prior to Plaintiff being sexually assaulted by Mr. Ferdinand. And Pine Forge did nothing.

The fact that Defendants ignored Veronica's experience and cry for help go directly to their negligence and their failure to protect Jane Doe. If this evidence is kept from the jury, they will only hear half the story of what Defendants knew or should have known, and when they knew or should have known it. Plaintiff's experts should be free to testify about that.

## II.    STATEMENT OF FACTS

Veronica attended Pine Forge Academy from August 2001 to May 2005.[1] (Ex. A at 12:4-6). She sang in the freshman choir her freshman year and the larger choir her sophomore through senior years. (Ex. A at 23:23-24:5). She sang a solo at choir performances from her sophomore to senior year. In her senior year, the relationship with Mr. Ferdinand "just sort of started to turn closer." (Ex. A at 57:19-20; 58:6-7). Mr. Ferdinand texted Veronica. (Ex. A at 58:7). He commented on her looks, and said things like "you look so pretty today." (Ex. A at 58:11-12). Mr. Ferdinand told Veronica that he loved her. (Ex. A at 58:9-10). Veronica was "often" in Mr. Ferdinand's office, alone with just her and him. (Ex. A at 76:12-17). At the time, Mr. Ferdinand was a 28 and then 29-year-old staff member at the school and Veronica was a 17 and then 18-year-old student.

The choir frequently traveled on weekends or breaks from school. On choir trips, Mr. Ferdinand would sit next to Veronica on the bus at night on the drives home. (Ex. A at 58:17-19). This happened 10 to 20 times. (Ex. A at 66:7-8). He would hold her hand while they sat next to each other on the bus. (Ex. A at 58:25-59:1). Veronica's head would lean on Mr. Ferdinand's shoulder, and Mr. Ferdinand would drape a coat over the two of them. (Ex. A at 98:2-4). Overall,

---

[1] Deposition excerpts attached hereto as Exhibit A.

Veronica testified that "he treated me like he was my boyfriend." (Ex. A at 59:24-60:2). There were other adults on the bus that would be able to see this misconduct. (Ex. A at 97:23-98:6).

Mr. Ferdinand was in charge of how many students would travel on a choir trip, and on occasion he would select more students than could fit on the bus. (Ex. A at 59:6-10). On those occasions, Mr. Ferdinand would have Veronica ride with Mr. Ferdinand in his personal vehicle at nighttime. (Ex. A at 59:10-12). She rode in his car when the bus was overbooked "no more than ten" times. (Ex. A at 68:3-4). He would hold her hand in the car. (Ex. A at 59:19). Sometimes, in order to make it not look so suspicious, Mr. Ferdinand would have Veronica bring a friend with them in the car. (Ex. A at 59:14-19). Other adults on the bus were responsible for having a head count, and would also see Veronica get off the bus to ride in Mr. Ferdinand's car. (Ex. A at 98:7-11).

Ultimately, on the morning of Veronica's graduation when she was 18-years-old, Mr. Ferdinand asked Veronica to come to see him in the music building on campus. (Ex. A at 60:3-13). That morning, he kissed her on the mouth. (Ex. A at 60:11). Veronica described the kiss as a sexual kiss. (Ex. A at 79:4).

Ferdinand's misconduct with Veronica then the Plaintiff followed a pattern that was observable to adults at Pine Forge. Plaintiff enrolled at Pine Forge as a sophomore the year after Veronica graduated. Plaintiff's testimony, which is corroborated by multiple other witnesses, is that Mr. Ferdinand began texting her, calling her, sitting next to her on the bus, draping a jacket over them on the bus, driving her in his personal vehicle, commenting on her looks, and telling her that he loved her dating back to her sophomore year and through her senior year at Pine Forge Academy.

Even students picked up on this pattern. Veronica's nickname in high school was "VJ." (Ex. A at 31:17-18). Jane Doe quickly got the nickname "little VJ" at Pine Forge, and Veronica heard about this even before Plaintiff got to college. (Ex. A at 106:14-18).

Veronica had a conversation with Pine Forge Dean of Young Woman Dean Camille Kibler when Veronica was a junior in college around 2007, which is before Plaintiff was sexually assaulted by Mr. Ferdinand. (Ex. A at 92:17-19; 94:9-11; 95:14-15). In that conversation, Veronica told Dean Kibler that "she needed to be careful and that she needed to watch out for the interactions between some of these male teachers and the female students." (Ex. A at 92:22-25).

> [Dean Kibler] proceeded to go down the list of male teachers and asked me, Do I need to watch out for this teacher? And I would say yes or no. And when she got to Jason Ferdinand, I said, Yes, you need to watch out for that teacher and female students. And there was another teacher that she listed, Neil Thomas, that I also told her she needed to watch out for that.

(Ex. A at 92:25-93:9). Veronica told Dean Kibler to "be diligent with the female students and those men." (Ex. A at 97:3-6). For context, Dean Kibler was one of the adult chaperones on the choir bus for choir trips while Veronica was in high school and so would be one of the many adults who "actively saw what was happening" between Mr. Ferdinand and Veronica prior to this conversation. (Ex. A at 98:4-16).

Veronica met the Plaintiff at college the year after Plaintiff graduated from Pine Forge. (Ex. A at 109:5-7). They got to know each other at this time, and "we literally were finishing each other's sentences" with regards to their high school experiences with Mr. Ferdinand. (Ex. A at 109:14-16). "[W]e were both sick to our stomachs just talking about it, like, oh, my gosh, like he literally said the same thing." (Ex. A at 110:11-14). Veronica testified that she realized that Mr. Ferdinand's conduct was "predatory," "methodical," and "patterned." (Ex. A at 109:23-25).

Veronica and the Plaintiff spoke in college about conversations with Dean Camille Kibler prior to the abuse:

> But from what I recall, I believe that Jane Doe told me that she told Dean Camille. I don't know what exactly she told Dean Camille, but that she went to Dean Camille, and Dean Camille said something to the effect of, these things happen sometimes. And I was -- because I remember being mortified because I was just like, I just -- you know, because, at that time, when she was -- when she was telling me this -- or around that time, I had already gone to talk to Dean Camille, you know, my junior year and kind of let her know what was going on. So to hear that, No. 1, Dean Camille had already gotten warned, you know, by me. And then here another girl is coming and saying, Hey, I'm in trouble. I mean, you know, stuff's happening. And then she was told that these things happen sometimes. I was -- I was so disgusted.

(Ex. A at 121:22-122:23).

Veronica will testify live at trial in this matter.

### III.    LAW AND ARGUMENT

#### A.  The Above Evidence is Relevant

What the Defendants and their agents knew about Mr. Ferdinand and his interactions with female students is one of the most, if not the most, important issues in this case. Plaintiff must prove that Defendants did not act reasonably under the circumstances. The circumstances are that this man ignored multiple boundaries that should have existed with Veronica, that this man violated multiple Pine Forge policies with Veronica, that adults at Pine Forge saw those boundary and policy violations, and that at least one adult at Pine Forge was told by this victim to watch out for this man and female students. After all of that, nothing changed. Pine Forge allowed Mr. Ferdinand to continue the same inappropriate conduct with "little VJ" that he engaged in with "VJ." And eventually the Plaintiff was assaulted.

**B.  The Probative Value of the Evidence is High, and Any Prejudice is not Unfair**

The Court has discretion to exclude relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403. Contrary to Defendants' argument, this is not an instance where that discretion should be exercised to preclude evidence. The probative value of this evidence is incredibly high. The jury will be asked to decide whether Pine Forge Academy and Dean Camille Kibler acted reasonably carefully under the circumstances. To do that, they must hear all of the circumstances. Dean Kibler did not just receive a single report from the Plaintiff about Jason Ferdinand. She also received a report from an older, graduated student. At the time that she received each report, she had already observed Mr. Ferdinand spending a lot of time with both girls who made the reports. Her failure to respond to either one is arguably negligent, but the probative value of the entire reporting history is very high.

Whether evidence presents the risk of unfair prejudice hinges on whether the evidence suggests a decision on an improper or illegitimate basis. *See U.S. v. Cross*, 308 F.3d. 308, 324 FN23 (3d Cir.2002) (rejecting the suggestion that evidence threatens unfair prejudice under Evid.R. 403 if it is merely undesirable from the defendant's perspective). "[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *U.S. v. Cross*, 308 F.3d. 308, 323 (3d Cir.2002). There is nothing improper or illegitimate about the jury learning about Veronica's experience which was so closely tied to Plaintiff's. The evidence here is highly probative, but there is no risk of prejudice that is actually unfair.

Plaintiff has hired a retired FBI agent from the Bureau's Behavioral Analysis Unit to discuss grooming, including but not limited to the tactics employed by predators, and the fact that those tactics are observable and often repeated by the same offender. Veronica's experience plays

a central part in analyzing this case, and taking Veronica's experience out of it would be entirely improper.

Plaintiff has also hired an expert to evaluate the policies, procedures, trainings, and actions (or lack thereof) of the Defendants in relation to keeping children safe. This expert similarly cannot evaluate the whole picture if he is not allowed to evaluate Veronica's experience.

Precluding any reference to Veronica at trial will deprive Plaintiff of evidence that is central to her case. If the jury does not hear about Veronica's experience, which includes adults at Pine Forge ignoring the misconduct they witnessed and ignoring a report that girls at the school were in danger, they will not have the truth because they will not have the whole truth. Defendants' motion attempts to use Evid.R. 403 to mislead the jury, a danger that the rule itself is employed to protect against. Defendants' arguments that this evidence is unfairly prejudicial is essentially an argument that the relevant evidence is just too harmful to their case. That is not a valid basis to keep it out.

### C.  This Is Not Improper Character Evidence

Defendants cite Evid.R. 404(a)(1) without truly analyzing the rule's application to this case and also without including Evid.R. 404(b)(2). First, Plaintiff is not offering any evidence about Mr. Ferdinand's character to prove that he acted consistent with his character toward the Plaintiff. Instead, Plaintiff is offering evidence of Mr. Ferdinand's observable conduct with Veronica and Veronica's report about it. None of that has to do with his character, *i.e.*, who he is in a general sense in terms of his moral and ethical qualities. It does have to do with the Defendants in this case and how they were on notice and should have taken some action to prevent harm to female students, specifically the Plaintiff.

7

Even if this Court finds that there is some character evidence at trial, reading further in Evid.R. 404 explains that this type of conduct evidence would still be admissible:

(b) OTHER CRIMES, WRONGS, OR ACTS.

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Evid.R. 404(b)(1-2). Again, Plaintiff is not presenting any evidence related to Veronica to show that Mr. Ferdinand acted in accordance with his character vis-à-vis Plaintiff. Even so, the evidence is admissible under Evid.R. 404(b)(2) to prove Defendants' and their agents were on notice and other valid purposes.

In *United States v. Caldwell*, the Third Circuit articulated four important factors for determining the admissibility of evidence under Evid.R. 404(b):

1) Is offered for a proper, non-propensity purpose that is at issue in the case;

2) Relevant to that identified purpose;

3) Sufficiently probative under Evid.R. 403 and not outweighed by unfair prejudice; and

4) Accompanied by a limiting instruction, if requested.

760 F.3d 267, 277-78 (3d Cir. 2014). If the Court finds that any of this is character evidence and Defendants would like an accurate limiting instruction, this Court is capable of giving one at trial.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff requests that this Court DENY Defendant's *Motion in Limine*.

Respectfully submitted,

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Any Evidence Relating to Veronica Johnson was served via the Court's ECF Filing System upon all counsel of record on this date July 10, 2026.

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**