**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JANE DOE, | | : | Civil No. 5:25-cv-02838-JMG |
| | Plaintiff, | : | |
| | | : | |
| | v. | : | JUDGE JOHN M. GALLAGHER |
| | | : | |
| PINE FORGE ACADEMY, *et al.,* | | : | |
| | Defendants. | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S EXPERT WITNESS ADRIENNE ISOM MALIN [SIC] TESTIMONY AT TRIAL**

Now Comes Plaintiff, by and through the undersigned counsel, and hereby responds to Defendants' Motion *in Limine* to Preclude Plaintiff's Expert Witness Adrienne Isom Malin Testimony [sic] at Trial (Doc. 55).

## I.   INTRODUCTION

Defendants Pine Forge Academy and the Allegheny East Conference of Seventh-Day Adventists ("Defendants") seek to preclude or at least limit the testimony of Plaintiff's expert Adrienne Isom Malin.

Ms. Malin has authored a report that discusses grooming, its phases, its purposes, its effects, how to detect it, and how to prevent it from leading to childhood sexual abuse. The report is comprehensive in its consideration of the available literature and Ms. Malin's training, education, and experience. Her testimony is relevant because this case involves a Plaintiff who was groomed for two and a half years before she was assaulted on two occasions by her choir director. Nothing in Ms. Malin's report is "designed to prejudice and enflame." Instead, Ms. Malin will offer fact and well-founded opinion testimony based on the available literature and her

education, training, and experience as a Supervisory Special Agent with the Federal Bureau of Investigation's Behavioral Analysis Unit.

## II.    LAW AND ARGUMENT

The Court has discretion to exclude relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403. Whether evidence presents the risk of unfair prejudice hinges on whether the evidence suggests a decision on an improper or illegitimate basis. *See U.S. v. Cross*, 308 F.3d. 308, 324 FN23 (3d Cir.2002) (rejecting the suggestion that evidence threatens unfair prejudice under Evid.R. 403 if it is merely undesirable from the defendant's perspective). "[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *U.S. v. Cross*, 308 F.3d. 308, 323 (3d Cir.2002). Contrary to Defendants' argument, this is not an instance where the Court's discretion should be exercised to preclude evidence. The probative value of this evidence is high, and any prejudice is not "unfair."

**A. Ms. Malin's Testimony About Grooming and the Resulting Sexual Abuse Within Religious and Secular Institutions Is Relevant to Her Qualifications, Supported By the Literature and Her Experience, and Is Germane to this Case.**

The Defendants seek to preclude Ms. Malin from testifying regarding parallels to child sexual abuse within religious institutions, references to the Catholic Church, and references to religious doctrine and systems.

First, this type of testimony will be relevant to Ms. Malin's qualifications, training, and experience. In order for Ms. Malin to testify as an expert, Plaintiff must demonstrate that she is qualified. Ms. Malin had over 400 hours of classroom training during her time at the FBI's Behavioral Analysis Unit. (Malin Report[1] at Pg. 3). She testified in two grand jury investigations involving members of the Catholic Church. (Malin Report at Pg. 4). Not all FBI agents will be

---

[1] Ms. Malin's report was filed by Defendants at Doc. 55-2.

qualified to discuss grooming and the other topics in Ms. Malin's report. Plaintiff must show why she specifically is qualified, and that is why the Defendants' motion should be denied..

Second, within the broader topic of grooming is how grooming works within an institution[2] and how that would affect the victim.

> Another important work was authored by McAlinden (2006) who further broadened the understanding of grooming and discussed the concept of "institutional grooming." This type of grooming involves an offender's manipulation of "systems" and institutions (e.g., educational system, criminal justice system, religious groups, etc.) to believe that he/she poses no risk to children. McAlinden pointed out that institutions involved in the care of children appear to be "self-protective, secretive and closed by nature. As such, they discourage the drawing of attention to any deficiencies in policies and procedures and the signs of abuse." Further, she noted that if the institution is well regarded among local agencies and parents, children in that setting "may experience added difficulties in both resisting and disclosing the abuse.

(Malin Report at Pg. 18). Broadly, Ms. Malin will testify that it matters whether an offender is grooming within an institution or in some other setting. A neighbor grooming the minor living next door is different than a history teacher grooming a public-school student. If the grooming happens in an institution, the type of institution also matters. To limit Ms. Malin's testimony in the way the Defendants request would strip it of necessary context and leave the jury with an incomplete and thus inaccurate picture of what happened at Pine Forge.

Ms. Malin appropriately acknowledges that "the scope of this case is far different that of the Catholic Church in Pennsylvania." (Malin Report at 36). However, there are parallels that Ms. Malin must be permitted to discuss.

Defendants cite *Humphries v. Barber* toward the end of their brief with no real analysis as to how it relates to this case. *Humphries* was a case in which Plaintiff Humphries sued Defendant

---

[2] Specifically, a religious one.

Barber for alleged hazing and bullying when the two men were members of the Penn State football team in 2018. *Humphries v. Barber*, No. 4:20-CV-0064, 2025 WL 1479497, at *1 (M.D. Pa. May 22, 2025). The court there precluded "unmoored" references to Jerry Sandusky, his conduct, and his victims as irrelevant because neither party was a Sandusky victim and there was no other relevance to Sandusky in the bullying case the court was presiding over. *Id.* at *4. The court noted that Sandusky's offenses occurred between 1995-2008 and he was convicted in 2012, years before the parties were on the football team in 2018. *Id.*

Presumably, the Defendants cite *Humphries* in support of their urging this Court to preclude Ms. Malin from making reference to the Catholic Church. The difference, as highlighted above, between a bullying victim mentioning Sandusky and Ms. Malin referencing the Catholic Church is that: 1) Ms. Malin is an expert witness who must be qualified based on her education, training, and experience; 2) her training and experience involves the Catholic Church; 3) what has occurred in the Catholic Church (and other instructions) informs our understanding of grooming, its phases, its purposes, its effects, and how to detect and prevent it from leading to childhood sexual abuse; and 4) referencing "Sandusky" in a case of one adult man suing another for bullying is apples to oranges and was properly precluded at trial in *Humphries*; but this case involves a religious school failing to protect a student from sexual abuse just like the Catholic Church has been accused of doing. Ms. Malin should not be limited on these topics.

### B. Child Abduction, Missing Children, and Human Trafficking Will Not Be a Focus of Ms. Malin's Testimony.

In sharp contrast to the topics in the preceding section, child abduction, missing children, and human trafficking have nothing to do with this case. Plaintiff will not have Ms. Malin testifying on those issues, beyond the fact that she did work in these areas while working for the FBI. Again,

Ms. Malin has to be qualified by her education, training, and experience and these areas cannot be erased from her background.

Defendants also seek preclusion of testimony regarding "child sex offenders." The central question to this case is whether the Defendants allowed one of their students to be assaulted. The perpetrator of that assault would be a sex offender. This testimony is relevant and cannot be precluded. Ms. Malin has "trained hundreds of investigators at domestic and international conferences and training events on best practices and behavioral considerations for investigating child sex offenders (including grooming)… and use of empirically supported techniques for interviewing offenders." (Malin Report at Pg. 4). She has also co-authored publications on child sex offenders. (Malin Report at Pg. 4). She is qualified to testify regarding the topic, and it is relevant to this case.

### C.  Ms. Malin Must Be Allowed to Talk About the Grooming of Veronica Johnson and How It Relates to This Case.

Defendants have sought to entirely remove Veronica Johnson's experience at Pine Forge Academy from this case. Plaintiff would refer this Court to her Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Any Evidence Relating to Veronica Johnson (Doc. 60) for a complete argument as to why there should be no exclusion of any testimony regarding Veronica. Ms. Malin must be able to discuss the facts related to Veronica because Veronica was groomed largely in the same way Plaintiff was groomed, and because Plaintiff's grooming started the first semester Veronica was no longer enrolled at Pine Forge.

Defendants miss the point by criticizing Ms. Malin's analysis of Veronica's experience at Pine Forge and inclusion of Veronica in Ms. Malin's conclusion section. Ms. Malin will testify that the FBI defines grooming as "a dynamic process utilizing a constellation of behaviors aimed at gaining cooperation of the child to achieve sexual gratification for the offender." (Malin Report

at Pg. 18). Like most processes, grooming is repeatable. Ferdinand's process with the Plaintiff was to utilize almost the exact same constellation of behaviors he had used with Veronica. And detection of grooming "is far more straightforward when behaviors are chronic, sustained and repeated in my opinion. Bystanders, particularly those privy to additional context (e.g., policies, rules, expectations, etc.) can observe a pattern of behavior." (Malin Report at Pg. 21). References to Veronica are not bolstering, they are a necessary part of the analysis.

### D.  The Fact That The Grooming In This Case Was Observable Is An Undeniable Fact and Is Important to Ms. Malin's Opinions.

Ms. Malin will explain that some grooming behavior happens in private and some is observable. Both categories fall within the "constellation of behaviors" the FBI has identified as grooming. Whether the behaviors are observable or not is important in analyzing the overall grooming scheme as well as its effect on the victim. Further, the jury will consider what the Defendants knew or should have known about Mr. Ferdinand's behavior and the risks it presented when they deliberate in this matter. Central to this is the observable grooming practices coupled with explicit reports to Defendants agents that Mr. Ferdinand was engaged in misconduct.

### E.  Ms. Malin Is Not Offering Legal Conclusions.

Defendants cite *Bethlehem Area Sch. Dist. V. Zhou* to argue that Ms. Malin has made impermissible legal conclusions as to "culpability" and "victimization." Those terms are not used as legal conclusions by Ms. Malin. She uses the word "culpability" once in her report on Pg. 36. It is used to transition her report from the delayed disclosure section to the analysis of Pine Forge Academy. In the very next sentence, she continues:

> I am familiar with and have been involved in investigations of employees of youth-serving organizations whose action/inaction put children at risk for harm. Specifically, I testified in the grand jury investigations of widespread sexual abuse of children across seven dioceses of the Catholic Church in Pennsylvania. This included opinion testimony about the conduct of church leaders who were

> aware of the allegations and the impact of their action/inaction on victims and on the offenders' behaviors.

(Malin Report at Pg. 36). Ms. Malin is performing the same role in this case. It was appropriate in the criminal context and it is also appropriate here. Ms. Malin uses the term "victimization" six times in her report, and each time it is to describe with a very general term the experience of someone who is groomed and eventually touched sexually. It is not a legal conclusion, it is just a way to describe what someone has been through.

## III.    CONCLUSION

Based on the foregoing, Plaintiff requests that this Court DENY Defendant's *Motion in Limine*.

Respectfully submitted,

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Plaintiff's Expert Witness Adrienne Isom Malin Testimony [sic] at Trial was served via the Court's ECF Filing System upon all counsel of record on this date July 15, 2026.

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**