**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JANE DOE, | | : | Civil No. 5:25-cv-02838-JMG |
| | Plaintiff, | : | |
| | | : | |
| | v. | : | JUDGE JOHN M. GALLAGHER |
| | | : | |
| PINE FORGE ACADEMY, *et al.,* | | : | |
| | Defendants. | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE ANY TESTIMONY AND EVIDENCE REGARDING NEIL THOMAS**

Now Comes Plaintiff, by and through the undersigned counsel, and hereby responds to Defendants' Motion *in Limine* to Preclude Any Testimony and Evidence Regarding Neil Thomas. (Doc. 57).

## I.    INTRODUCTION

Pine Forge Organist and Science Teacher Neil Thomas frequently observed Jason Ferdinand engaging in inappropriate conduct with female students at Pine Forge Academy. There is no evidence that he ever reported what he saw, or tried to protect the Plaintiff or any other student. Neil Thomas also engaged in inappropriate conduct with at least one female student himself, and Pine Forge knew that. Rather than take any action to reprimand the offenders or protect the female students, Neil Thomas continued to travel across the country with the choir as a Chaperone to the underaged female students. Had there been a Chaperone with the courage to report what they were seeing, Plaintiff would not have been assaulted twice on the choir bus.

Defendants Pine Forge Academy and the Allegheny East Conference of Seventh-Day Adventists ("Defendants") seek to exclude testimony regarding Neil Thomas as irrelevant and unfairly prejudicial. Their arguments should be rejected.

II.    **STATEMENT OF FACTS**

A.  **Neil Thomas Spent Ample Time With the Pine Forge Choir as its Organist.**

The choir at Pine Forge would frequently travel across the county on weekends and during school breaks. The choir would typically travel by bus, and occasionally by plane.[1] (Ex. A at 40:12-22). The amount of adult chaperones from Pine Forge would vary. (Ex. A at 41:11-13). Neil Thomas was a regular, "pretty consistent" chaperone on the bus trips because he played instruments for the choir. (Ex. A at 41:13-22).

B.  **Jason Ferdinand Engaged in Observable Inappropriate Behavior With Two Female Choir Students.**

Jason Ferdinand was the choir's director. Veronica Johnson was a standout member of the choir. By 2004, Mr. Ferdinand began texting Veronica, calling her, sitting next to her on the choir bus, draping a jacket over them on the bus, driving her in his personal vehicle, commenting on her looks, and telling her that he loved her.[2] Veronica, known as "VJ," graduated in Spring 2005. The morning of her graduation Mr. Ferdinand forced a sexual kiss upon Veronica. Plaintiff enrolled in the school in Fall 2005. Almost immediately, Plaintiff was nicknamed "little VJ" because Mr. Ferdinand began engaging in the same behavior he had engaged in with Veronica with Plaintiff. After two and a half years of this patterned grooming behavior, Mr. Ferdinand sexually assaulted Plaintiff on two occasions.

---

[1] Excerpts from the deposition of Bianca Hall are attached as Exhibit A.

[2] For a more comprehensive factual summary of Mr. Ferdinand's inappropriate behavior with Veronica, see Plaintiff's Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Any Evidence Relating to Veronica Johnson (Doc. 60).

**C.  Mr. Thomas Was Best Positioned to See Mr. Ferdinand's Inappropriate Behavior.**

Mr. Thomas was the adult at Pine Forge who was the closest, on a day-to-day basis, to the inappropriate acts of Mr. Ferdinand toward Veronica, and later the Plaintiff. He was present at choir practice multiple days during the week. He was on the bus trips. He saw Plaintiff alone in hotel rooms with Mr. Ferdinand. There is no evidence that he ever did anything to investigate, intervene, or even at least tell someone that Mr. Ferdinand was violating boundaries and school policies.

**D.  Mr. Thomas Was Not Fit to Supervise Children.**

Bianca Hall testified that "I can say that I saw Mr. Thomas have students that he was -- took a liking to, similar to how Ferdinand took a liking to Jane Doe. I saw that with my own eyes." (Ex. A at 143:5-8). Bianca mentioned that while she was in high school, "Taina" was one of the students linked to Mr. Thomas and inappropriate behavior. (Ex. A at 126:9-21).

Thaina Blot attended Pine Forge Academy from 2002 to 2006.[3] (Ex. B at 8:23-9:1). Neil Thomas was Thaina's "campus father" which was part of a larger welcoming program at Pine Forge at the time. (Ex. B at 27:7-16; 33:13-21). "[I]t was fine until it wasn't. And he sent me a few inappropriate photos." (Ex. B at 27:20-21).

Subsequently, Thaina was returning by plane after a break from school. (Ex. B at 28:2-5).

> [Mr. Thomas] had to pick me up from the airport, he was to pick me up from the airport and he brought me to his house. He was like, yeah, I just wanted to show you where I live, whatever. It was fine until he showed me his bedroom and the way that he was looking at me, like I was afraid that something was going to happen. So I was like, can you take me back to the dorm now? And he was like, no, let's just stay awhile. And I was, like, no, I need to go back to the dorm now and he took me back. But it was a crazy ride back. He

---

[3] Excerpts from the deposition of Thaina Blot are attached as Exhibit B.

> was swerving all down the Manatawny, which is like the road that we got to go to the dorm.
>
> So I ran inside. I was crying like crazy, running in, I ran straight to my room. The next morning Dean Camille called me downstairs and she was best friends with Neil Thomas. She called me downstairs. She asked me what happened. She saw me crying when I ran into the dorm the night before. I explained it to her. She called me a liar. She didn't change her tune until I described his place to her and that's when she came up with, you're going to write a letter telling him to never talk to you again and I'm going to deliver it to him.

(Ex. B at 28:3-25). This series of events occurred in Thaina's sophomore year, which is 2003-2004, before Plaintiff enrolled at Pine Forge. (Ex. B at 30:1-7).

### E. Additional Agents of Pine Forge Knew Neil Thomas Was Not Fit to Supervise Children

Thaina discussed the situation with Neil Thomas (without mentioning his name) with Nurse Leftridge, the school nurse who stood in as a therapist at Pine Forge while Thaina was still a student at the school. (Ex. B at 35:15-36:9). This conversation with Nurse Leftridge occurred in 2004. (Ex. B at 36:10-13).

Thaina conveyed details of her experience with Mr. Thomas to Pine Forge teacher Norman Niles between Spring 2006 and Spring 2008. (Ex. B at 33:22-34:9). Nurse Leftridge and Mr. Niles were both mandatory reporters of suspected child abuse at the time, and there is no evidence that they made a mandatory report or did anything else with the information shared by Thaina with regards to Mr. Thomas.

### F. Apart From Thaina's Disclosures About Mr. Thomas, Veronica Warned Dean Kibler About Him.

At this point, there is one report from Thaina to Dean Kibler that Mr. Thomas presented a danger to the female students. Veronica Johnson also had a conversation with Pine Forge Dean of Young Woman Dean Camille Kibler when Veronica was a junior in college around 2007, which

is before the Plaintiff was sexually assaulted by Mr. Ferdinand.[4] (Ex. C at 92:17-19; 94:9-11; 95:14-15). In that conversation, Veronica told Dean Kibler that "she needed to be careful and that she needed to watch out for the interactions between some of these male teachers and the female students." (Ex. C at 92:22-25).

> [Dean Kibler] proceeded to go down the list of male teachers and asked me, Do I need to watch out for this teacher? And I would say yes or no. And when she got to Jason Ferdinand, I said, Yes, you need to watch out for that teacher and female students. And there was another teacher that she listed, Neil Thomas, that I also told her she needed to watch out for that.

(Ex. C at 92:25-93:9). Veronica told Dean Kibler to "be diligent with the female students and those men." (Ex. C at 97:3-6). Veronica included Neil Thomas in her warning to Kibler because she had heard about his inappropriate behavior with students at Pine Forge at the time. Thus, prior to Plaintiff being sexually assaulted, Dean Kibler had received two warnings about Neil Thomas and multiple warnings about Jason Ferdinand being inappropriate with the school's female students. Yet, the two men were still allowed to travel the country with young girls and little to no oversight.

## III.   LAW AND ARGUMENT

### A. The Testimony Regarding Mr. Thomas is Relevant.

Two separate negligence theories brought by Plaintiff in this case are that 1) Defendant failed to protect the Plaintiff; and 2) Defendant failed to properly supervise its employee, Mr. Ferdinand.

In terms of protecting the Plaintiff, there is no dispute in this case that every adult employee at Pine Forge had an obligation to look out for student safety, and that there were state laws in place obligating educators like Mr. Thomas to make mandatory reports of suspected child abuse

---

[4] Excerpts from the deposition of Veronica Johnson are attached as Exhibit C.

to the school's administrator. As stated, Mr. Thomas was a frequent chaperone on choir trips, was probably the closest adult to Mr. Ferdinand at Pine Forge in terms of proximity and frequency of interactions, and directly observed Mr. Ferdinand's misconduct. He was placed in a position of protector even more so than a typical teacher at the school. And he was entirely unfit to do that because he himself engaged in sexual misconduct. The jury must know all of the information that has a tendency to prove or disprove whether or not Defendants placed capable and trustworthy adults in a position to keep the Plaintiff safe. Thomas' placement is a complete failure of those responsibilities and the jury should know that.

Another reason this is relevant is Dean Kibler's knowledge. By the time Veronica Johnson reported to Dean Kibler that she should watch out for Jason Ferdinand and Neil Thomas' conduct with girls at Pine Forge, Dean Kibler already knew that Neil Thomas had taken Thaina to his home and specifically to his bedroom. The jury has to determine the reasonableness of Dean Kibler's conduct in the context of all the information that Ms. Kibler had at the time. Dean Kibler went through a list of 10-12 adult males with Veronica, and the only two she was told to be diligent with were Mr. Ferdinand and Mr. Thomas. Ms. Kibler should have realized at that point, and frankly long before, that the only two adult men associated with the choir, who traveled around the country with these young women and stayed with them in hotels, were a major threat to their safety.

Importantly, Plaintiff has exclusively cited evidence from depositions taken by Defendants' counsel in this Memorandum. Plaintiff is under no obligation to elicit any testimony in those depositions. Defendants' motion regarding Neil Thomas is best held in abeyance as premature at this time. While this memorandum alone shows why the motion must be denied, this Court is more than capable of ruling on any Thomas-related objections at trial, as Plaintiff's full

case is being presented to the jury. A broad exclusionary ruling at this point would be based on incomplete information.

**B. The Probative Value of the Evidence is not Substantially Outweighed by Any Risks.**

The Court has discretion to exclude relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403. Contrary to Defendants' argument, this is not an instance where that discretion should be exercised to preclude evidence. The probative value of this evidence is incredibly high. The jury will be asked to decide whether Defendants acted reasonably carefully under the circumstances. To do that, they must hear all of the circumstances. The jury shouldn't be misled to think that this Chaperone had a sterling record when that is simply not true.

Whether evidence presents the risk of unfair prejudice hinges on whether the evidence suggests a decision on an improper or illegitimate basis. *See U.S. v. Cross*, 308 F.3d. 308, 324 FN23 (3d Cir.2002) (rejecting the suggestion that evidence threatens unfair prejudice under Evid.R. 403 if it is merely undesirable from the defendant's perspective). "[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *U.S. v. Cross*, 308 F.3d. 308, 323 (3d Cir.2002).

This evidence is certainly undesirable to the Defendants, but it is not unfair because it provides a proper and legitimate basis for the jury to weigh the reasonableness of Defendants' conduct in protecting Plaintiff and supervising Mr. Ferdinand in light of what they knew about their Chaperone.

### C.  Evid.R. 404 Does Not Compel Exclusion of the Evidence.

Defendants do not explicitly or meaningfully argue that Evid.R. 404 should compel the exclusion of testimony regarding Mr. Thomas. Instead, they quote a portion of the rule in one sentence of their brief. Nonetheless, Plaintiff will respond in full.

The evidence complained of is not presented as character evidence. The acts and knowledge of them by Dean Kibler, Mr. Niles, and Nurse Leftridge is all relevant to show Defendants' notice and negligence. To make the point with an example:

- Company A is a taxi service that knows that Driver B was in 25 car accidents last year.

- Company A hires Driver B to drive customers despite knowledge of the accidents.

- Rider C hires Company A and gets picked up by Driver B who proceeds to drive recklessly and gets in an accident that harms Rider C.

At trial in the matter, evidence of the 25 prior accidents doesn't come in to prove that the driver got in an accident with Rider C in the car or was driving recklessly with Rider C in the car. But it does come in to show that Company A never should have hired the driver to safely transport customers. Using Evid.R. 404 to keep the 25 prior accidents out would act as a negligence shield that would deprive Rider C from the only evidence that could prove his entirely meritorious claim.

Translated to this case, Plaintiff is not attempting to prove that Mr. Thomas engaged in sexual misconduct directly with the Plaintiff by proving that he engaged in sexual misconduct with Thaina. It is offered to show the knowledge of misconduct held by three different agents of Pine Forge, and that the school still allowed Mr. Thomas to serve as a Chaperone and tasked him with protecting children, including the Plaintiff. That is textbook negligence. Excluding the evidence allows Defendants to use Evid.R. 404 as a shield against highly probative evidence that the jury needs to consider, including the fact that positioning Mr. Thomas so close to Mr. Ferdinand was

in no way adequate supervision of Mr. Ferdinand because both men crossed boundaries with students.

Evid.R. 404 "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for what he did, not who he is." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).[5] This is a negligence case where the jury will have to determine whether Defendants and Dean Kibler's conduct was reasonable under the circumstances. It is not a criminal case where the question is "did the defendant commit the murder" or "did the defendant sell the drugs." In judging reasonableness in a negligence case, the jury needs to know all of the circumstances to appropriately determine whether the Defendants and their agents acted appropriately. Evidence regarding Neil Thomas is an important one of those circumstances.

Evid.R. 404(b) states:

(b) OTHER CRIMES, WRONGS, OR ACTS.

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Evid.R. 404(b)(1-2). Plaintiff should be entitled to present evidence of Neil Thomas and Dean Kibler's wrongs and acts under this rule.

The Third Circuit has articulated a test for admittance of evidence under Evid.R. 404(b) when a defendant has objected under Evid.R. 404(a). Prior act evidence is inadmissible unless the evidence:

---

[5] *Caldwell* was a criminal case, but the principal is translatable to a civil case.

1) Is offered for a proper, non-propensity purpose that is at issue in the case;

2) Relevant to that identified purpose;

3) Sufficiently probative under Evid.R. 403 and not outweighed by unfair prejudice; and

4) Accompanied by a limiting instruction, if requested.

*United States v. Caldwell*, 760 F.3d 267, 277-78 (3d Cir. 2014).

### 1) *The Evidence Serves a Proper, Non-Propensity Purpose*

Plaintiff is not presenting the evidence of Mr. Thomas' misconduct with Thaina to say he engaged in the same misconduct with the Plaintiff. Instead, Plaintiff is presenting the evidence of Mr. Thomas' misconduct to show that he looked the other way when someone else engaged in similar misconduct. As discussed, Plaintiff is also presenting this evidence to show the knowledge of Defendants and their agent and that Neil Thomas was unfit to keep kids safe. There are other valid purposes for admissibility of this evidence but those are the two main purposes.

### 2) *The Evidence is Relevant*

This is discussed in Section III(A), *supra*.

### 3) *The Evidence Should Not Be Precluded under Evid.R. 403*

This is discussed in Section III(B), *supra*.

### 4) *Defendants are Free to Request an Accurate Limiting Instruction*

Defendants have not but are welcome to request accurate limiting instructions regarding this evidence that the Court can give to the jury at trial.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff requests that this Court DENY Defendant's *Motion in Limine*.

10

Respectfully submitted,

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Any Testimony and Evidence Regarding Neil Thomas was served via the Court's ECF Filing System upon all counsel of record on this date July 15, 2026.

**CONSTANT LEGAL GROUP, LLP**

/s/ *Edward J. Kelley, III*
Edward J. Kelley, III Esq.
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 333-6707
(216) 274-9365 (facsimile)
ed@constantllp.com

**Attorney for Plaintiff**