**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE, <br><br>                       Plaintiff, <br>      v. <br><br> PINE FORGE ACADEMY, <br><br>      and <br><br> ALLEGHENY EAST CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS, <br><br>                      Defendants. | No.: 5:25-cv-2838 <br><br><br> JURY TRIAL DEMANDED |

**DEFENDANTS PINE FORGE ACADEMY AND ALLEGHENY EAST
CONFERENCE CORPORATION OF THE SEVENTH-DAY ADVENTISTS' BRIEF
<u>PURSUANT TO COURT ORDER DATED JULY 15, 2026</u>**

Defendants, Pine Forge Academy and Allegheny East Conference Corporation of Seventh-Day Adventists, by and through their counsel, Weber Gallagher Simpson Stapleton Fires & Newby LLP, hereby file this Brief in accordance with this Honorable Court's Order dated July 15, 2026 (ECF-71), and in support thereof, state as follows:

### I.    <u>INTRODUCTION</u>

The matter before this Court are two specific issues set forth in the Court's Order dated July 15, 2026 (ECF-71) as follows: (1) Defendants' Motion *in limine* to preclude Plaintiff from presenting testimony of or making any reference to Veronica Johnson at trial (ECF-56) and whether Federal Rule of Evidence 415 is applicable to the admissibility of Ms. Johnson's testimony; and (2) whether and to what extent the alleged misconduct affects Defendants' ability to assert a comparative negligence defense. For the reasons set forth herein, Defendants respectfully submit

that FRE 415 is not applicable to the admissibility of Ms. Johnson's testimony and Defendants may assert the comparative negligence defense at trial.

## II.    SUMMARY OF PERTINENT FACTS

Plaintiff initiated this lawsuit by filing her Complaint on or about June 3, 2025, in connection with two incidents of alleged unwanted physical contact that occurred on a bus almost 20 years ago in February or March 2008 between Plaintiff, a then 17 ½ year old student in her senior year of high school at Pine Forge Academy, a private co-educational boarding school, and a part-time male choir director, Jason Max Ferdinand ("Dr. Ferdinand"), who is a former employee of Pine Forge Academy. Plaintiff contends that the physical contact consisted of "rubbing her private parts" on two occasions while riding on a bus during a choir trip (ECF-1). Dr. Ferdinand is not a defendant in this lawsuit. Plaintiff's Complaint sets forth the following theories of liability: (i) Count I – Negligence; (ii) Count II – Negligent Hiring, Training, Supervision and Retention; (iii) Count III - Negligent Infliction of Emotional Distress; and (iv) Count IV – Vicarious Liability for Agents' Negligence.[1] (ECF-1).

As set forth in Defendants' motion *in limine* (ECF-56), Plaintiff seeks to present the testimony of Ms. Johnson, a former student at Pine Forge Academy, who claims that on her graduation day in May 2005 when Ms. Johnson was 18 years old, Mr. Ferdinand kissed her in a campus office. Pertinent to Defendants' motion to preclude the testimony of Ms. Johnson are the following excerpts from Ms. Johnson's deposition testimony:

1. Ms. Johnson attended Pine Forge Academy from Fall 2001 until her graduation in May 2005. (*See* D.T. Johnson at 12:6-25, 18:9-13, attached as **Exhibit A**).

---

[1] Count IV references Dean Kibler, Dean Peace, and Mr. Thomas who are not defendants in the lawsuit as "negligent." (Id. at ¶¶152-171).

2. Plaintiff began attending Pine Forge Academy in Fall 2005, after Ms. Johnson had graduated; Plaintiff and Ms. Johnson did not attend Pine Forge Academy at the same time and did not know each other. (Id. at 31:1-11, 52:11-16).

3. Plaintiff and Ms. Johnson met in spring semester 2009 at Oakwood University, when Plaintiff was a freshman and Ms. Johnson was a senior at Oakwood; Ms. Johnson graduated from Oakwood in May 2009. (Id.)

4. Ms. Johnson testified during her senior year at Pine Forge in the 2004/2005 school year—before Plaintiff attended Pine Forge — Dr. Ferdinand allegedly sent her text messages stating that he loved her; commented on her appearance; sat next to her on the bus during choir trips; drove her and other students to or from off-campus choir performances; and held her hand in the car. Ms. Johnson also testified Dr. Ferdinand kissed her on graduation day in May 2005 when she was 18 years old. (Id. at 58:6-25, 59:1-25, 60:1-18, 68:5-15).

5. Ms. Johnson testified Dr. Ferdinand never made inappropriate comments to her in the presence of any adult or Pine Forge Academy staff member. (Id. at 63:7-16).

6. Ms. Johnson testified Dr. Ferdinand never made or posted comments or messages to her on social media. (Id. at 64:5-17).

7. Ms. Johnson testified no adult or Pine Forge Academy staff member was ever in Dr. Ferdinand's vehicle when he allegedly drove her with other students and held her hand. (Id. at 59:1-25, 68:5-15).

8. Ms. Johnson testified she never reported the alleged interactions described in Paragraph 4 above to any Pine Forge Academy staff and that she did not know of any adult who saw or knew of Dr. Ferdinand allegedly holding her hand or kissing her on graduation day in May 2005. (Id. at 73:5-18, 77:3-6, 92:9-17, 98:17-99:6).

9. Ms. Johnson testified she never made a report to law enforcement. (Id. at 92:2-8).

10. Ms. Johnson testified on one occasion, in or about 2007 while she was a student at Oakwood University, she saw Camille Kibler, Dean of Women at Pine Forge Academy, who was visiting the Oakwood campus, and told her, "be careful and watch out for the interactions between some of these male teachers and the female students."  Ms. Johnson testified she looked at a list of teachers' names and said "yes" to certain names, including Dr. Ferdinand, but said nothing else about him. (Id. at 92:17-25, 93:1-9, 95:18-24, 97:3-23).

11. Ms. Johnson testified she never told Ms. Kibler that Dr. Ferdinand allegedly held her hand. (Id. at 99:9-13, 99:23-100:7).

12. Ms. Johnson testified she never told Ms. Kibler that Dr. Ferdinand allegedly texted her a message or said that he "loved" her. (Id. at 99:14-22, 99:23-100:7).

13. Ms. Johnson testified she never told Ms. Kibler that Dr. Ferdinand allegedly commented on her appearance. (Id. at p. 99:18-22, 99:23-100:7).

14. Ms. Johnson testified she never told Ms. Kibler that Dr. Ferdinand allegedly kissed her. (Id. at 97:7-11).

In sum, the testimony of Ms. Johnson that Plaintiff seeks to present at trial pertains to alleged interactions she had with Dr. Ferdinand that occurred prior to Plaintiff's attendance at Pine Forge Academy; that Ms. Johnson never reported to Pine Forge Academy staff; that Ms. Johnson did not report to law enforcement; and that no identified Pine Forge Academy staff member witnessed.

## III.    LEGAL ARGUMENT – VERONICA JOHNSON TESTIMONY

### A.    Federal Rule of Evidence 415 is Not Applicable to the Admissibility of Veronica Johnson's Testimony Because Dr. Ferdinand is Not a Defendant

Federal Rule of Evidence 415 does not apply to the admissibility of Ms. Johnson's testimony at trial because Rule 415 can only apply, if at all, when a person who allegedly committed the sexual assault upon the Plaintiff and the past sexual assault is a named defendant in the civil lawsuit at trial. Because Dr. Ferdinand is not a party to this lawsuit, Rule 415 is completely inapplicable and cannot be invoked to admit the testimony of Ms. Johnson. Rule 415 may only apply, if at all, when the individual who allegedly committed the offense of a sexual assault is an "accused" in a criminal case or a "party" in a civil lawsuit – which is not the case here.   Rule 415 states, in pertinent part:

**Rule 415. Similar Acts in Civil Cases Involving Sexual Assault or Child Molestation**

   (a) **Permitted Uses.** In a civil case involving a claim for relief **based on a party's alleged sexual assault or child molestation**, the court may admit evidence that the **party** committed any other sexual assault or child molestation. The evidence may be considered as provided in Rules 413 and 414.

   (b) **Disclosure to the Opponent.** If a party intends to offer this evidence, the party must disclose it to the party against whom it will be offered, including witnesses' statements or a summary of the expected testimony. The party must do so at least 15 days before trial or at a later time that the court allows for good cause.

4

Fed. R. Evid. 415 (emphasis added).

As the Third Circuit has noted in analyzing the history of Rule 415: **"**Federal Rules of Evidence 413-415 were adopted by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, 108 Stat. 1796 (1994). Evidence law has historically prohibited the admission into evidence of 'other crimes, wrongs, or acts…to prove the character of the person in order to show action in conformity therewith.' Fed. R. Evid. 404(b). Rules 413-15 establish the exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation. Rules 413 and 414 apply to criminal proceedings, while Rule 415 applies to civil trials." <u>Johnson v. Elk Lake School District</u>, 283 F.3d 138 (3d Cir. 2002). "The Judicial Conference's Advisory Committee on Evidence Rules, with what it noted was 'highly unusual unanimity,' ardently opposed the new rules, fearing that they 'could diminish significantly the protections that have safeguarded **persons accused in criminal cases and parties in civil cases** against undue prejudice." <u>Id</u>. (emphasis added).

Federal Rule of Evidence 415 permits the introduction of evidence of a similar "offense…of sexual assault" in a civil trial in which a claim for damages **"is predicated on a <u>party's</u> alleged commission of conduct constituting an offense of sexual assault."** <u>Johnson</u>, 283 F.3d at148 (3d Cir. 2002) (emphasis added). In order for evidence of a past act to be considered for admission under Rule 415, the Court must determine whether the act satisfies the applicable definition of an "offense of sexual assault" provided by Rule 413(d) which states: "For purposes of this rule and Rule 415, 'offense of sexual assault' means a crime under Federal law or the law of a State…that involved –

> (1) Any conduct proscribed by chapter 109A of title 18, United States Code;
> (2) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person…"

Fed. R. Evid. 413(d).

In <u>Johnson v. Elk Lake School District,</u> 283 F.3d 138 (3d Cir. 2002), the Third Circuit Court of Appeals addressed, for the first time, the standards for admission of prior sexual misconduct evidence under Rule 415. In <u>Johnson</u>, the individual who allegedly committed the sexual assault against the plaintiff and who allegedly committed a prior sexual assault against another person **was a defendant in the lawsuit**. **The only defendant at the trial of the case was the individual defendant who allegedly committed the assaults.** In <u>Johnson</u>, the plaintiff sought to admit the testimony of a witness who allegedly had been "sexually assaulted" in the past by the same individual defendant who had allegedly sexually assaulted the plaintiff. The only reason Rule 415 came up in the <u>Johnson</u> case was because the individual who allegedly committed the sexual assault was the only defendant at trial.

In <u>Johnson</u>, the plaintiff was a high school student who alleged that the guidance counselor, **who was a defendant in the lawsuit**, sexually harassed her, including hugging and kissing her on several occasions, and at one point, fondled her breasts and vagina. The plaintiff sued the school district and the guidance counselor for violation of her civil rights under 42 U.S.C. §§1983, 1985 and 1986, as well as the commission of the torts of conspiracy, negligence, assault, and battery, and intentional infliction of emotional distress. All claims against the school district were dismissed on summary judgment. At the trial of the case against the guidance counselor on the state tort claims, the District Court excluded the testimony of a former co-worker of the defendant regarding an incident in which the defendant allegedly picked up the former co-worker off the floor and touched her in the crotch area. The jury returned a unanimous verdict in favor of the defendant, and the plaintiff filed an appeal.

The Third Circuit Court of Appeals, among other considerations, addressed the notice provision under Rule 415(b). The Court stated the "primary purpose of Rule 415(b)'s disclosure provision" was to "prevent[ing] a plaintiff from unfairly surprising **a defendant** at trial with evidence of an alleged past offense of sexual assault." Id. at 149, fn. 6 (emphasis added). Further, in reviewing the legislative history of Rule 415, the Third Circuit Court concluded "albeit with some reluctance," that if a trial court is considering evidence offered under Rule 415, the trial court must decide under Rule 104(b) "whether a reasonable jury could find by a preponderance of the evidence that the past act was an 'offense of sexual assault' under Rule 413(d)'s definition **and that it was committed by the defendant.**" Id. at 155 (emphasis added).[2] In further analyzing Rule 415 and its application in a civil case, the Third Circuit in Johnson stated that "even if a trial court is satisfied that the proffered past act evidence satisfies Rule 104(b), however, it may still exclude it under Federal Rule of Evidence 403, which allows for evidence to "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. at 155. Citing the legislative history of Rule 415, the Court concluded that Rule 403 is applicable to Rules 413-15 so that the trial court has the authority to exclude evidence of past sexual assaults **"allegedly committed by the defendant"** whose probative value is substantially outweighed by its prejudicial effect. Id. at 156 (emphasis added). The Court further explained that Rule 415 may apply "…where the past act is not substantially similar to the act **for which the defendant is being tried**…" Id. (emphasis added). In Johnson, where the counselor

---

[2] The Third Circuit Court cited Rule 104(b) and Huddleston v. United States, 485 U.S. 681, 689, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988) (the plaintiff may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected **to the defendant**…") Id. at 485 U.S. 681, 689.

was a defendant at trial, the Third Circuit held that the trial court did not abuse its discretion in excluding the testimony of the former co-worker. Id.

Rule 415 has limited application and creates a narrow exception to the general prohibition on propensity evidence. By its plain language, it may apply, if at all, only in a civil case involving a claim for relief based on "a **party's** alleged sexual assault." Fed. R. Evid. 415(a).  In the instant case, Dr. Ferdinand, who allegedly committed the sexual assault upon Plaintiff and who allegedly committed a past act of kissing Ms. Johnson, is **not** a defendant in this lawsuit. Defendants submit to this Honorable Court that a review of case law has not revealed Third Circuit Court or district court decisions invoking Rule 415 against an institutional defendant sued for negligence or related torts where the alleged abuser is **not** a party/defendant. Extending Rule 415 to a case where the alleged accused is not a defendant contradicts the plain language of Rule 415 which states the rule applies to a "party." Applying Rule 415 to a case where the alleged accused is not a defendant is contrary to the text of Rule 415 and the Advisory Committee's express statement that the Rule's language was not substantively altered. *See* Fed. R. Evid. 415 advisory committee's note to 2011 amendment. As demonstrated throughout the Third Circuit's opinion in Johnson including the legislative history of Rule 415, the Rule may only be invoked, if at all, when the plaintiff's claim for damages is predicated upon "t**he defendant's** alleged commission of a sexual assault." Id.; s*ee e.g.,* Carroll v. Trump, 124 F.4th 140 (2d Cir. 2024) (permitting the jury to consider evidence of a past sexual assault under Rule 415 "precisely to show that a **defendant** has a pattern or propensity for committing a sexual assault"). Id. at 154.

Federal Rule of Evidence 415 is not applicable to the admissibility of Veronica Johnson's testimony at trial. Therefore, the admissibility of Ms. Johnson's testimony and evidence pertaining

to her interactions with Dr. Ferdinand must instead be evaluated under Rules 401, 403, and 404(b) as discussed further below and in Defendants' original Motion *in Limine*.

> **B.**     **The Testimony of Veronica Johnson and Evidence Related to Her Interactions with Dr. Ferdinand is Not Relevant and Any Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion of the Issues, or <u>Misleading the Jury</u>**

The testimony of Veronica Johnson is not relevant, and even if deemed relevant, which it  is not under Rule 415, the probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury and undue delay.

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 402 states that "irrelevant evidence is not admissible." Fed. R. Evid. 402. Even in cases where Rule 415 applies, which is not the case here, the Court's authority under Rule 403 continues to apply to exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one ore of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" is defined in the comment to Rule 403: "Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403 Advisory Committee Note (cited by <u>Zenith Radio Corp. v. Matsushita Elec. Indus. Co.</u>, 505 F. Supp. 1125, 1161 n. 32 (E.D. Pa. 1980)).

In the instant case, in her response to Defendants' motion, Plaintiff refers to her negligence claims as including "what they knew and when they knew it with respect to Jason Ferdinand's misconduct." (ECF 60 at p. 1). This Court should preclude Plaintiff from introducing any testimony relating to or restating Ms. Johnson's unsubstantiated or speculative assertions. This

case is not about litigating Ms. Johnson's, a non- party, claims which Ms. Johnson admits she did not make known to Defendants. Ms. Johnson testified, and it is undisputed, that she never reported any of the alleged incidents (text messages that Dr. Ferdinand loved her, holding her hand, making comments about her appearance or kissing her on graduation day) to any staff at Pine Forge Academy, nor was there any specifically identified Pine Forge staff member who allegedly observed the specific incidents that she described. Ms. Johnson's testimony is that the only encounter she had with Dean Kibler was years later in college and that at that time, she told Ms. Kibler only to "be careful" and "watch out" and nothing more. (Id. at pp. 92, 93, 95, 97). Even if believed, Ms. Johnson's comments were nothing more than vague, general words. She never mentioned any of her alleged interactions with Dr. Ferdinand to Ms. Kibler.

Because Ms. Johnson's anticipated testimony at trial is that she never reported the alleged incidents and cannot identify a Pine Forge Academy staff member who specifically observed "I love you" text messages, comments about her appearance, holding her hand, or a kiss on graduation day, her testimony is not relevant to Plaintiff's negligence claims, and "hearing about" Ms. Johnson's "experience" will simply result in conducting a mini-trial of Ms. Johnson's unsubstantiated assertions within the real trial of this case, confuse the jury and unfairly prejudice the Defendants.

### C.    Plaintiff Seeks to Introduce Improper Character Evidence Disguised as <u>Purported Notice</u>

Despite invoking Rule 404(b), Plaintiff's assertions in her response to Defendants' motion suggest an inference that Rule 404 prohibits in that Dr. Ferdinand allegedly behaved this way toward Ms. Johnson, so he likely behaved similarly toward Plaintiff. In her response, Plaintiff argues that "Ferdinand's misconduct with Veronica then the Plaintiff followed a pattern…" (ECF 60 at p. 3). This is a classic example of propensity reasoning, which Rule 404 forbids, that is, using

alleged prior conduct (which is not admissible under Rule 415) to prove conduct in conformity therewith. Plaintiff cannot circumvent Rule 404 simply by re-labeling improper character evidence as "notice."

> **D.**     **Plaintiff's Expert Witnesses Are Precluded from Testifying to Opinions That Rest on Assumptions Based Upon Ms. Johnson's Unfounded Allegations and <u>Speculative Testimony</u>**

In her response to Defendants' motion, Plaintiff asserts that two of her expert witnesses should be allowed to evaluate Ms. Johnson's testimony to support their opinions at trial. However, this assertion misapplies Rule 702. Expert testimony must be grounded in facts that are otherwise admissible or properly considered under the Rules of Evidence. *See* <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F. 3d 408 (414-15 (3d Cir. 2002) (Exclusions of expert testimony were appropriate where the expert's opinion rested on assumptions not supported by the record and was based upon speculation). As such, an expert cannot transform inadmissible evidence into admissible evidence merely by relying on it, repeating it, or characterizing it as part of an opinion. Nor may Plaintiff circumvent Rules 401, 403, and 404 by using an expert as a conduit for Ms. Johnson's allegations to come into trial.

> **IV.     <u>LEGAL ARGUMENT - COMPARATIVE NEGLIGENCE</u>**

The defense in this case seeks a comparative negligence charge and jury verdict interrogatory and apportionment for Plaintiff's negligent action(s)**. Plaintiff agrees that comparative negligence applies in this case as demonstrated by Plaintiff's proposed jury instructions and jury verdict form filed with this Court.** (ECF-49 and 49-1, Plaintiff's Proposed Jury Instruction No. 21 and ECF-51, Plaintiff's Proposed Verdict Sheet).

This Honorable Court's Order dated July 15, 2026 (ECF-71) inquires as to "whether and to what extent the alleged misconduct affects Defendants' ability to assert a comparative negligence

defense." To the extent the alleged misconduct is that of Dr. Ferdinand, who is not a defendant in this lawsuit, it is respectfully submitted that there is no misconduct alleged by Plaintiff as to Defendants (ECF-1)**.** Pennsylvania's Comparative Negligence Act ("The Act"), broadly applies to negligence actions and allocates responsibility according to each party's causal fault. The Act provides:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.
> 42 Pa. Cons. Stat. § 7102(a).

At a minimum, where the evidence would permit a reasonable jury to conclude that Plaintiff's own negligent conduct contributed to the injuries or damages claimed, the issue should be submitted to the jury. Gilpin v. Langan, 789 F.2d 1034, 1035 (3d Cir. 1986) (holding that where evidence existed from which reasonable juror could draw contrary conclusion, disputed facts pertaining to plaintiff's possible negligence had to be submitted to the jury); s*ee also* Mull v. Ickes, 994 A.2d 1137, 1141 (Pa. Super. 2010) (comparative negligence is generally for the jury unless reasonable minds could not disagree).

This Honorable Court directs the parties to address two cases cited in the July 15, 2026 Order, Duchesneau v. Cornell Univ., No. CIV.A. 08-4856, (E.D. Pa. Nov. 23, 2011) and Krivijanski v. Union R. Co., 515 A.2d 933, 936 (Pa. Super. Ct. 1986). Defendants submit that these cases are distinguishable from the instant case because they address comparative negligence where "willful and wanton conduct" was pled against a defendant, which is not the case here (ECF-1). In Duchesneau, the Court addressed the effect of an award of punitive damages upon the application of comparative negligence under a conflicts of law analysis between New York law and

Pennsylvania law. The Court noted that the Pennsylvania Comparative Negligence Act "is designed to 'balance two equal forms of conduct and in so doing allocate the cost in terms of whose action was most responsible for the injury." Id. at *14-15 (citing Burke v. Maasson, No. 88-8444, 1989 U.S. Dist. LEXIS 5991, 1989 WL 57340, at *2 (E.D. Pa., May 30, 1989). The Court recognized that there is a distinction between willful or wanton conduct, and negligence, finding, "…[b]ecause of the 'longstanding distinction Pennsylvania courts have made between willful or wanton conduct and negligent conduct." Id at *12, (quoting *Krivijanski*, 515 A.2d at 936; s*ee also Burke v Maasson*, No. 88-8444, 1989 U.S. Dist. LEXIS5991, at *2-3 (E.D. Pa. May 30, 1989).'" Without further analyzing the allegations of "willful or wanton conduct," the Court applied New York law to the comparative negligence defense.

In *Krivijanski,* which involved two fatalities, the court held that "when willful or wanton misconduct is involved, comparative negligence should not be applied." The court provided the following definitions: "**Wanton conduct** has been defined as 'something different from negligence, however gross, different not merely in degree but in kind and evincing a different state of mind on the part of the tort feasor.'" Id. at 936 (citations omitted). "Negligence consists of inattention or inadvertence, whereas **wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at <u>least a willingness to inflict injury,</u>** a conscious indifference to the perpetration of the wrong." Id. (citing Kasanovich v. George, 348 Pa. 199, 203, 34 A.2d 523, 525 (1943)) (emphasis added). "**Wanton misconduct**…means that **the actor has intentionally done an act of an unreasonable character,** in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow…" Id. (emphasis added). "…it differs…from that negligence which consists in **intentionally doing an**

13

**act with knowledge that it involves a risk substantially greater in amount that that which is necessary to make his conduct negligent."** Id. at 937 (emphasis added).

Here, the Complaint sets forth negligence claims. Dr. Ferdinand is not a defendant in the lawsuit, and the Complaint does not assert any claims for willful or wanton conduct, nor any claims asserting a "willingness to inflict injury" or "intentionally doing an act of an unreasonable character." In fact, the Complaint alleges that Defendants, "through their employees and other agents, **unintentionally** caused" harm to Plaintiff and "are responsible for her damages." (ECF-1) (emphasis added). In addition, there are no allegations of misconduct against the Defendants, so the only other party against whom Plaintiff's negligence can be compared is that of Pine Forge Academy and Allegheny East Conference Corporation of the Seventh-Day Adventists. There is no "equating" of "wanton or willful conduct" or "misconduct" of the Defendants with negligence of the Plaintiff. The negligence alleged against Defendants is simple or ordinary, and as such, comparative negligence principles apply.

Defendants deny liability and contend that Plaintiff's own conduct may have contributed to the injuries or damages allegedly sustained. Plaintiff's own conduct is relevant to whether Defendants' alleged negligence was a factual cause of the claimed injuries and to the apportionment damages. As such, to the extent the evidence demonstrates Plaintiff voluntarily engaged in conduct that increased the risk of harm, failed to heed known warnings, concealed material information, or otherwise acted unreasonably under the circumstances, Pennsylvania's comparative negligence statute permits the jury to apportion fault. The comparative negligence defense is applicable to the Plaintiff's acts or omissions that allegedly contributed to the damages claimed and/or recoverable in this negligence action.

14

## V.    CONCLUSION

In sum, Defendants respectfully submit that Fed. R. Evid. 415 does not apply to the admissibility of Veronica Johnson's testimony and the Pennsylvania Comparative Negligence Act applies to this case.

Respectfully submitted,

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP**

*/s/ Tracy A. Walsh*

By:    _____

Tracy A. Walsh, Esquire
I.D. No. 62481
Matthew P. Donelson, Esquire
I.D. No. 84155
Georgios Farmakis, Esquire
I.D. No. 319119
2000 Market Street, Suite 1300
Philadelphia, PA 19103
T: (215) 972-7900
twalsh@wglaw.com
matthew.donelson@wglaw.com
gfarmakis@wglaw.com
*Attorneys for Defendants*

Date:  July 20, 2026