**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-02838-JMG |
| | : | |
| PINE FORGE ACADEMY, *et al* | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                 **July 27, 2026**

### I.    OVERVIEW

This case arises from allegations of grooming and child sexual abuse. When Plaintiff Jane Doe[1] was a student at Defendant Pine Forge Academy, she alleges that her choir director, Dr. Jason Max Ferdinand, groomed and sexually assaulted her. Plaintiff brought this negligence lawsuit against Defendants Pine Forge Academy and Allegheny East Conference Corporation of Seventh-Day Adventists (collectively, "Defendants").

In anticipation of trial, Plaintiff and Defendants (collectively, the "Parties") filed a total of ten motions *in limine*. The Court ruled on seven of the ten motions. *See* Order, July 17, 2026 (ECF No. 72). Defendants' motions *in limine*, seeking to preclude "other acts" evidence and Plaintiff's experts, remain.[2] For the following reasons, Plaintiff may introduce "other acts" evidence that

---

[1] As discussed with the Parties at the Final Pretrial Conference on July 22, 2026, Plaintiff's real name will be used at trial.

[2] The Court has already ruled on one motion that sought to preclude "other acts" evidence. *See* Order, ¶ 7 July 17, 2026 (ECF No. 72). However, as discussed below, the Court finds it necessary to amend its order.

Defendants' agents knew or should have known, and Plaintiff's experts may testify at trial, with minor preclusions.

## II.    LEGAL STANDARD

### a.   Motion *in Limine*

The Court has "wide discretion in determining the admissibility of evidence under the Federal Rules." *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 218 (3d Cir. 2010) (quoting *United States v. Abel,* 469 U.S. 45, 54 (1984)). "Motions *in limine* allow the trial court to rule on the admissibility and relevance of evidence" before trial. *Williams v. City of Phila. Off. of Sheriff*, No. CV 17-2697, 2023 WL 198586, at *2 (E.D. Pa. Jan. 15, 2023). accordingly, motions *in limine* narrow the evidentiary issues and eliminate unnecessary interruptions during trial. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The Court should only exclude evidence on a motion *in limine* if the movant demonstrates "it is clearly inadmissible on all potential grounds." *See Kaisinger v. Walmart Stores, Inc.*, No. CV 18-855, 2024 WL 1536040, at *1 (E.D. Pa. Apr. 9, 2024) (quoting *Feld v. Primus Techs. Corp.*, No. 12-1492, 2015 WL 1932053, at *1 (M.D. Pa. Apr. 28, 2015)).

All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. *See* FED. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "Rule 401's definition of relevance is 'very broad' and 'does not raise a high standard.' " *Williams*, 2023 WL 198586, at *2 (quoting *United States v. Leake*, 396 F. App'x 898, 903 (3d Cir. 2010)).

### b. Admissibility of Expert Testimony

"Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotations omitted). "Rule 702 has a liberal policy of admissibility," so long as an expert meets the requirements of qualification, reliability, and fit. *Nat'l Fire & Marine Ins. Co. v. Newtown Square, LLC*, No. CV 21-5397, 2024 WL 1683609, at *2 (E.D. Pa. Apr. 18, 2024) (citing *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997)); *J.L. v. Lower Merion Sch. Dist.*, No. CV 20-1416-KSM, 2024 WL 5227410, at *3 (E.D. Pa. Dec. 26, 2024).

Rule 702 was amended in 2023 and currently reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. The text of Rule 702 has not been substantively altered other than to clarify that "the party proposing the expert witness must show that each prong [of admissibility]— qualification, reliability, and fit—is satisfied by a preponderance of proof." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4; *Johnson v. Comodo Group, Inc.*, No. CV 2:16-04469, 2024 WL 2933195, at *4 n.6 (D.N.J. June 10, 2024); *Power v. Hewlett-Packard Co.*, No. 2:17-CV-00154, 2024 WL 4040432, at *3 (W.D. Pa. July 19, 2024). The amendment also "emphasizes that a court

must evaluate the reliability of an expert's conclusions drawn from his or her methodology, not just the methodology itself." *Power*, 2024 WL 4040432, at *4.

**First**, the Court must evaluate the expert's qualifications. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020). A witness is qualified if the witness has "specialized expertise" in the testimony's subject matter. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A "broad range of knowledge, skills and training" can make an expert qualified. *Phila. Tr. Co. v. Temple Univ. Hosp., Inc.*, No. 2:21-CV-03413, 2024 WL 5057595, at *2 (E.D. Pa. Dec. 9, 2024) (internal quotations omitted*); see Pineda*, 520 F.3d at 244. This is admittedly a low bar, even with the recent amendment to Rule 702. *See Phila. Tr. Co.*, 2024 WL 5057595, at *2. The specialized expertise or knowledge required can come from "practical experience as well as academic training and credentials." *Id.* (internal quotations omitted).

**Second**, the Court must assess the ***reliability*** of the expert's testimony. *See UGI Sunbury LLC*, 949 F.3d at 832. "Rule 702's reliability threshold requires expert testimony to be based on the ***methods*** and procedures of science." *Id.* at 833-34 (internal quotations omitted) (emphasis added). In other words, the expert must use a reliable technique or process to form the basis of their opinion, which is what courts refer to as "good grounds." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80-81 (3d Cir. 2017); *Pineda*, 520 F.3d at 247. "[A]n expert's testimony is admissible so long as the process or technique the expert used in forming the opinion is reliable." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *4 (quoting *Pineda*, 520 F.3d at 244) (other citation omitted). "[I]f the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to

2023 amendment. But "[s]peculation does not cut it." *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025).

The reliability requirement makes certain that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Lower Merion Sch. Dist.*, 2024 WL 5227410, at *7 (quoting *Keller v. Feasterville Fam. Health Care Ctr.*, 557 F. Supp. 2d 671, 676 (E.D. Pa. 2008)). In making this determination, courts are encouraged to evaluate:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error;
> (4) the existence and maintenance of standards controlling the technique's operation;
> (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have been established to be reliable;
> (7) the qualifications of the expert witness testifying based on the methodology; and
> (8) the non-judicial uses to which the method has been put.

*Cohen v. Cohen*, 125 F.4th 454, 462 (3d Cir. 2025) (quoting *UGI Sunbury*, 949 F.3d at 834).

**Third**, the Court must determine whether the expert's testimony "fits" the case. *See UGI Sunbury LLC*, 949 F.3d at 832. An expert witness's testimony fits a case only if it more likely than not "will **help the trier of fact** to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a) (emphasis added); *UGI Sunbury LLC*, 949 F.3d at 835. "The fit requirement ensures that there is a sufficient nexus between the expert's testimony and the facts that the jury is being asked to consider." *Bradley v. Amazon.com, Inc.*, No. CV 17-1587, 2023 WL 2574572, at *4 (E.D. Pa. Mar. 17, 2023), *reconsideration denied*, 2023 WL 2843788 (E.D. Pa. Apr. 6, 2023) (internal quotation marks and citations omitted). "Put another way, this is a question of relevance, and Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility if it has the potential for assisting the trier of fact." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir.

2010) (internal quotation marks and citations omitted); *see United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (explaining fit is primarily a "relevance concern"). But the "testimony will be excluded if it is not scientific knowledge *for purposes of the case*." *Cohen*, 125 F.4th at 464 (quoting *UGI Sunbury*, 949 F.3d at 835) (emphasis in original).

### III.    ANALYSIS

#### a.  "Other Acts" Evidence Involving Other Students

Defendants have moved to preclude the testimony of non-parties, Veronica Johnson and Thania Blot, former students at Defendant Pine Forge Academy who were offered by Plaintiff to testify as to their own experiences with sexual improprieties allegedly committed by teachers at the school. *See generally* Defs.' Mot. *in Lim.* to Preclude Any Evid. Relating to Veronica Johnson ("Defs.' Mot. Preclude Johnson") (ECF No. 56); Defs.' Mot. *in Lim.* to Preclude Any Test. and Evid. Regarding Neil Thomas ("Defs.' Mot. Preclude Thomas") (ECF No. 57). Although the Court has already ruled on the admissibility of the "other acts" evidence pertaining to Mr. Thomas, the Court finds it necessary to amend its prior Order (ECF No. 72) and clarify the scope of its admissibility for the Parties after hearing Plaintiff's arguments at the Final Pretrial Conference.

Plaintiff offers the testimony of Ms. Johnson and Ms. Blot pursuant to Federal Rule of Evidence 404(b).[3] "Rule 404(b) is a rule of general exclusion[.]" *United States v. Repak*, 852 F.3d

---

[3] The Court asked the Parties to submit supplemental briefing on the applicability of Federal Rule of Evidence 415. *See* Order, July 15, 2026 (ECF No. 71); FED. R. EVID. 415(a) ("In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation. The evidence may be considered as provided in Rules 413 and 414."). If applicable, the Court would not have to engage in the Rule 404(b) analysis. *See United States v. Williams*, 458 F.3d 312, 318 n.5 (3d Cir. 2006) (acknowledging Rule 415 created an exception to the prohibition on propensity evidence). Defendants contend that Rule 415 is inapplicable because it only applies when the *defendant* is the offender. *See* Defs.' Br. Pursuant to Court's Order Dated July 15, 2026, at 4-9 (ECF No. 75). Because Plaintiff declined the opportunity to fully brief this issue, the Court will neither address the applicability of Rule 415 any further nor comment on the merits of Defendants' argument. *See* Pl.'s Trial Br. Regarding Evid. R. 415 and Defs.' Willful or

6

230, 240 (3d Cir. 2017) (quoting *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014);

citing *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014)). That is, "other acts" evidence is

to be excluded "***unless*** the proponent can demonstrate that the evidence is admissible for a non-

propensity purpose." *Id.* (quoting *Caldwell*, 760 F.3d at 276) (emphasis in original). The burden

of demonstrating admissibility lies with the party seeking to admit "other acts" evidence. *See id.*

at 241 (*Caldwell*, 760 F.3d at 276). This involves four steps: (1) the evidence "must be proffered

for a non-propensity purpose;" (2) it "must be relevant to the identified non-propensity purpose;

(3) its probative value must not be substantially outweighed by its potential for causing unfair

prejudice to the defendant; and (4) the "other acts" evidence must be accompanied by a limiting

instruction, if requested. *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988);

*Caldwell*, 760 F.3d at 277–78).

By seeking admissibility under Rule 404(b), Plaintiff acknowledges the inflammatory

nature of this "other acts" testimony, but nonetheless contends such evidence is properly

admissible to establish the non-propensity purpose of showing Defendants' knowledge of

inappropriate conduct by Dr. Ferdinand and Mr. Thomas towards students. As further discussed at

the Final Pretrial Conference, the Court agrees with Plaintiff as to those other acts for which

Defendants were on notice, such as acts reported to or observable by agents of the school.

However, Plaintiff fails to meet her burden as to other acts for which she does not proffer

knowledge on the part of Defendants, including kissing one student, texting an explicit photograph

to the other, and sharing inappropriate communications with both.

---

Wanton Misconduct (ECF No. 76) ("[R]ather than offer the evidence under Evid.R. 415, Plaintiff believes the stronger argument is that the testimony regarding Veronica Robinson is admissible under Evid.R. 404(b).").

As the Court understands Plaintiff's argument, she contends the unreported incidents were knowable to Defendants had they diligently followed up on information they did have, such as observable inappropriate conduct on school trips, Ms. Blot's encounter with Mr. Thomas in his bedroom, and the general admonition provided to Dean Kibler by Ms. Johnson that the school should be careful of Dr. Ferdinand around female students at the school. Said otherwise, Plaintiff offers the unreported incidents not to establish what Defendants knew or should have known, but rather what they ***could have known***. But this theory is both too attenuated and too speculative to fulfill Plaintiff's evidentiary burden under Rules 404 and 403. It is too attenuated in that the evidence does not establish knowledge. Rather, it is one possible step on a potential path of what Defendants could have come to know. It is also too speculative because it requires an assumption that the kiss and inappropriate communications would have been revealed to Defendants had they had taken certain investigative steps with the information they did have. And the next necessary assumption would be that Ms. Johnson and Ms. Blot would then have provided information they had previously declined to reveal.

Moreover, the proffered evidence also fails Rule 403 scrutiny. Admitting speculative evidence of low probative value would be substantially outweighed by the danger of unfair prejudice. It would introduce highly inflammatory allegations never brought to the attention of Defendants, necessitate mini-trials to evaluate the credibility of the late-made claims, and confuse and distract the jury from evaluating the competing claims of the Parties in this case.

To summarize, Plaintiff has failed to meet her burden—as the proponent of the non-reported incidents offered pursuant to Rule 404(b)—to articulate a clear, unbroken chain of non-propensity inferences connecting the purportedly relevant evidence of acts unknown to Defendants to the offered non-propensity purpose of establishing knowledge on part of Defendants. Plaintiff's

theory of "could have learned" leading to "would have known" does not satisfy her evidentiary burden. And to get there would introduce inflammatory and confusing claims involving non-parties, and never known by Defendants, a key issue in this litigation.

### b. Plaintiff's Expert Adrienne Isom Malin

#### 1. Defendants' Motion is Untimely

On July 8, 2026, Defendants filed a motion *in limine*, seeking to preclude Plaintiff's Expert, Adrienne Isom Malin, from testifying at trial. Defendants' motion is a *Daubert* motion dressed as a motion *in limine*. *See Taylor v. Shield*, 744 F. App'x 83, 87 (3d Cir. 2018) (recognizing courts look past the label parties place on a filing and consider its substance). The deadline for submitting *Daubert* motions has long passed. *Daubert* motions were due on April 10, 2026. *See* Am. Scheduling Order (ECF No. 34). Moreover, the Court fails to see any good cause for the delay, as Ms. Isom Malin completed her report on December 4, 2025—106 days before the original *Daubert* motion deadline and 127 days before the amended deadline. *See* Scheduling Order (ECF No. 20); Am. Scheduling Order (ECF No. 34).

Defendants' motion challenging Ms. Isom Malin's testimony comes far too late. Accordingly, Defendants' motion (ECF No. 59) is **DENIED** as untimely. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); FED. R. CIV. P. 16(f)(1)(C) (stating Rule 37(b)(2)(A)(ii)-(vii) sanctions apply when a party or its attorney fails to obey a scheduling or other pretrial order); FED. R. CIV. P. 37(b)(2)(A)(ii) (recognizing Court can prohibit Defendants from opposing designated defenses or introducing designated matters in evidence).

#### 2. The Court's *Sua Sponte Daubert* Analysis

Despite Defendants' untimely *Daubert* motion, the Court has exercised its gatekeeper role and considered Ms. Isom Malin's report, Defendants' points of contention, Plaintiff's opposition,

9

and the Parties' arguments at the Final Pretrial Conference. *See Pineda*, 520 F.3d at 243 ("Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." (internal quotations omitted)); *Pugh v. Northampton Hosp. Co., LLC*, No. 23-2262, 2024 WL 3581171, at *3 (3d Cir. July 30, 2024) (affirming district court's decision to exclude an expert where the court in *Pugh v. Cmty. Health Sys., Inc.*, No. 5:20-CV-00630-JMG, 2023 WL 3361166 (E.D. Pa. May 10, 2023) did not hold a *Daubert* hearing and excluded expert testimony by a *sua sponte Daubert* determination); *Schloss v. Sears Roebuck & Co.*, No. 04-CV-2423, 2006 WL 8459575, at *3 (E.D. Pa. Sept. 27, 2006) ("A district court's *Daubert* inquiry need not take any specific form, and its *sua sponte* consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." (quoting *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006))).

Ms. Isom Malin is well qualified. She earned a master's degree in forensic psychology, and she worked as an FBI Special Agent and Criminal Profiler for more than twenty years. While employed by the FBI, Ms. Isom Malin was promoted to the Behavioral Analysis Unit, where she completed over 400 hours of classroom and applied skills training on a variety of topics—including, but not limited it, psychology, behavioral interviewing, sex offenders, sexual assault, and rape—and became certified to conduct Behavioral Analysis. She has extensive experience investigating child sexual abuse and has previously testified as an expert on offender grooming behavior in two grand jury investigations that involved members of the Catholic Church. Collectively, Ms. Isom Malin's education and training make her sufficiently qualified.

Moreover, Ms. Isom Malin's methodology is reliable. In forming her opinion, Ms. Isom Malin relied on her professional experience, as well as peer-reviewed work by practitioners,

professors, and clinicians whose research and practice focus on child sexual abuse and its perpetrators. She particularly relied on the FBI Behavioral Analysis Unit's five-stage grooming model and the empirically validated Sexual Grooming Model. Ms. Isom Malin evaluated the evidence against her professional experience and these scholarly sources. Additionally, she deliberately identified behaviors that could be benign but became concerning with repetition and context.

Ms. Isom Malin's testimony also fits this case. Plaintiff's claims turn on what Defendants knew or should have known about Dr. Ferdinand's conduct, and whether that conduct, viewed through the lens of recognized grooming patterns, was reasonably detectable by Defendants' agents. Her analysis of observable grooming behavior and parallels to other cases involving child sexual abuse within a religious institution will help the jury evaluate whether Dr. Ferdinand's behavior constituted grooming and Defendants failed to prevent it.

Most of Defendants' specific objections to Ms. Isom Malin's testimony fall into four general buckets: (1) references to and conclusions about religion; (2) references to and conclusions about Veronica Johnson, particularly as it relates to testimony the Court ruled was inadmissible; (3) references to "child abduction, missing child investigations, sex trafficking of juveniles, and child sex offenders"; and (4) references to and conclusions about Defendants' culpability or victimization, *i.e.*, ultimate issue testimony. *See* Mot. Preclude Isom Malin, at 3-5. Each of these topics is fair game.

First, Defendants are a religious school, and Ms. Isom Malin has experience with investigating the Catholic Church for child sexual abuse allegations. This experience is sufficiently relevant and reliable under Rule 702. However, the Court agrees with Defendants that it would be unfair for Ms. Isom Malin to preface her conclusions about Defendants with: "Like the Catholic

Church." The abuse in the Catholic Church is a fair point of reference for explaining the witness's experience and the opinions she reaches in the case, but suggesting the conduct of Defendants is comparable to the Catholic Church in this direct, inflammatory manner is a step too far.

Second, Ms. Isom Malin need not consider *only* admissible evidence in forming her opinion. Rule 703 expressly recognizes that an expert can rely on inadmissible evidence "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See* FED. R. EVID. 703. So even with the Court's limitations on Ms. Johnson's testimony, Ms. Isom Malin can still consider this testimony in forming her opinion because she is an expert on grooming. Such an expert would consider grooming patterns, which include Ms. Johnson's experiences. However, Ms. Isom Malin is **PRECLUDED** from disclosing to the jury the otherwise inadmissible portions of Ms. Johnson's testimony in opining whether Dr. Ferdinand groomed Plaintiff.[4] *See id.* ("But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

Third, the only reference to "child abduction, missing child investigations, sex trafficking of juveniles, and child sex offenders" in Ms. Isom Malin's report pertains to her employment background. This information is relevant to show her extensive experience in child abuse-type cases. Moreover, Defendants refused to stipulate to Ms. Isom Malin's qualifications.

Lastly, Ms. Isom Malin's expert opinion is not objectionable just because she embraces an ultimate issue. *See* FED. R. EVID. 704(a). Expert testimony that embraces an ultimate issue is

---

[4] If Plaintiff believes Defendants opened the door to Ms. Johnson's testimony coming into evidence after Defendants' cross-examination of Ms. Isom Malin, the Court expects Plaintiff to bring it to the Court's attention at sidebar before proceeding with introducing Ms. Johnson's testimony.

admissible as long as it meets Rule 702's requirements and does not "usurp[] the role of either the jury or the courts." *See In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 419 (E.D. Pa. 2015). Defendants specifically take issue with the verbiage "culpability" and "victimization." *See* Mot. Preclude Isom Malin, at 5. Ms. Isom Malin's report addresses Defendants' "culpability" in that she opines on policies and missed opportunities to address concerns, and she discusses Plaintiff's and Ms. Johnson's "victimization" in reference to Dr. Ferdinand's alleged misconduct. Defendants insist, without further explanation, that these are "impermissible legal conclusions." *See id.* Defendants' conclusory argument is insufficient. Moreover, the Court finds this testimony to be helpful to the jury and thus admissible.

### c.  Plaintiff's Expert William Bainbridge, Ph.D.

Defendants' motion *in limine* to preclude certain statements and opinions of Dr. Bainbridge is another *Daubert* motion dressed as a motion *in limine*. But because some of the issues could not have been raised until recently, the Court will address each argument within the motion individually.

First, Defendants argue that Dr. Bainbridge should not be permitted to testify about allegations of negligent hiring because the Complaint contains no factual allegations pertaining to hiring, and no evidence of negligent hiring developed during discovery. *See* Defs. Mot. *in Lim.* to Preclude Certain Statements and Op. by Pl.'s Expert Witness William Bainbridge, Ph.D. ("Mot. Preclude Bainbridge"), at 2-3 (ECF No. 59). Defendants' arguments come far too late. The time to raise these arguments were at the motion to dismiss and motion for summary stages, respectively.

Defendants also take issue with Dr. Bainbridge opining that the lack of background check implies that Dr. Ferdinand had a criminal record. Mot. Preclude Bainbridge, at 3. This argument is untimely. Nor can the Court verify it, as Defendants did not attach Dr. Bainbridge's report to

13

their motion. Nonetheless, Plaintiff acknowledges that Dr. Bainbridge will not testify about the lack of a specific background check or imply that one would reveal a criminal record. Pl.'s Mem. in Opp'n to Defs.' Mot. *in Lim.* to Preclude Certain Statements and Op. by Pl.'s Expert Witness William Bainbridge, Ph.D. ("Pl.'s Opp'n to Mot. Preclude Bainbridge"), at 4 (ECF No. 63). The Court takes Plaintiff at her word.

Defendants' arguments that Dr. Bainbridge cites to no literature, and he improperly states that Defendants acted "recklessly" or where "negligent" are also untimely. *See* Mot. Preclude Bainbridge, at 3. Accordingly, the Court cannot assess more than what Defendants conveyed in the four corners of the motion, which is minimal and conclusory. But the Court notes that Plaintiff states Dr. Bainbridge will not testify that Defendants were negligent. *See* Pl.'s Opp'n to Mot. Preclude Bainbridge, at 5. Again, the Court trusts that Dr. Bainbridge will testify accordingly.

Additionally, Defendants argue that Dr. Bainbridge's addendum report is six months late. *See* Mot. Preclude Bainbridge, at 4. Plaintiff states that Defendants were still producing documents as late as mid-April, and Defendants' corporate representative's deposition did not resume until June 4, 2026. *See* Pl.'s Opp'n to Mot. Preclude Bainbridge, at 4. Plaintiff received that deposition transcript on June 23, 2026, and overnighted it to Dr. Bainbridge the following day. *See id.*

This delay was a creation of all Parties: the 30(b)(6) deposition was taken after the discovery cutoff, Defendants did not produce everything to Plaintiff until sometime after April 7, 2026, the 30(b)(6) deposition did not resume until June 4, 2026, the Parties seemingly did not request a rush order of the deposition transcript, and Plaintiff waited until June 23, 2026 to send Dr. Bainbridge all the documents. All the while, the Court was left uninformed of these delays. The last the Court had heard from the Parties was "taking this Civ.R. 30(b)(6) deposition after the discovery cutoff date [would] not affect the deadline for dispositive motions or trial in this matter."

*See* Stip. Regarding Taking a Dep. After Disc. Cutoff, at 2 (ECF No. 28). Even in other extension requests and status updates, no one conveyed any issues relating to the 30(b)(6) deposition, to the best of the Court's recollection. *See generally* Defs.' Mot. for Extension of Deadlines and to Amend Scheduling Order (ECF No. 35); Letter from Georgios Farmakis, Esq. to Judge John M. Gallagher, Apr. 17, 2026 (ECF No. 37).

Because this purported delay of the supplemental report is a creation of both Parties' making, the Court will not entertain this motion. And Dr. Bainbridge fulfilled his obligation of preparing a supplemental report, so he may testify to that supplemental report. *See* FED. R. CIV. P. 26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").

However, Defendants' point that Dr. Bainbridge attempts to inflame the jury is well taken. Defendants represent that throughout Dr. Bainbridge's report, he paints Defendants and their counsel in an unfair light by making comments like "Despite my request, Allegheny East Conference and Pine Forge Academy officials have so far declined to provide any evidence of …." and "Despite my request, Defense Counsel has so far declined to provide …." *See id.* at 3-4. Comments insinuating that Defendants or defense counsel hid documents from Dr. Bainbridge serve no helpful purpose for the jury and are highly prejudicial. Dr. Bainbridge is **PRECLUDED** from making such comments to the jury at trial.

## IV.    CONCLUSION

For the foregoing reasons, "other acts" evidence that is relevant to show Defendants' knowledge is admissible, and Plaintiff's experts may testify at trial with minor limitations. However, any "other acts" evidence in which Defendants lacked knowledge is inadmissible. An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge